1    KAREN P. HEWITT
     United States Attorney
2    PETER J. MAZZA
     Assistant United States Attorney
3    California Bar No. 239918
     Federal Office Building
4    880 Front Street, Room 6293
     San Diego, California 92101-8893
5    Telephone: (619) 557-7034

6    Attorneys for Plaintiff
     United States of America

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,    )    Case No.  08CR1811-WQH
                                  )
11                  Plaintiff,    )    DATE:      July 21, 2008
                                  )    TIME:       2:00 p.m.
12          v.                    )
                                  )    GOVERNMENT'S RESPONSE TO
13   ANGEL RIOS,                  )    DEFENDANT'S MOTIONS TO:
                                  )
14                                )    (1) DISMISS THE INDICTMENT
                                  )        FOR GRAND JURY VIOLATION;
15                                )    (2) COMPEL DISCOVERY AND
                                  )        PRESERVE EVIDENCE; AND
16                                )    (3) LEAVE TO FILE ADDITIONAL
                                  )        MOTIONS
17                                )
                    Defendant.    )
18                                )
     _____)
19

20        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and

21   through its counsel, Karen P. Hewitt, United States Attorney, and

     Peter J. Mazza, Assistant United States Attorney, and hereby files
22
     its response to Defendant ANGEL RIOS's ("Defendant") motions to
23
     dismiss the indictment for grand jury violations, compel
24
     discovery, and leave to file additional motions.  Said response is
25
     based upon the files and records of this case, together with the
26
     attached statement of facts and accompanying memorandum of points
27
     and authorities.
28

I

**STATEMENT OF THE CASE**

A.    **THE CHARGE**

On May 30, 2008, a grand jury sitting in the Southern District of California returned a two-count Indictment charging Defendant with bringing in illegal aliens for financial gain and aiding and abetting and bringing in illegal aliens without presentation and aiding and abetting.  On June 5, 2008, Defendant was arraigned on the Indictment.

B.    **STATUS OF DISCOVERY**

To date, the Government has produced all discoverable material related to this case in its possession and will continue to do so in accordance with the applicable rules of discovery.

II

**STATEMENT OF FACTS**

In his motion addressed herein, Defendant does not raise any factual issues.  Therefore, the Government relies upon the reports provided to counsel in discovery to provide a factual basis for this response and opposition.

III

**POINTS AND AUTHORITIES**

A.    **THE GRAND JURY WAS NOT MISINSTRUCTED**

Defendant moves to dismiss the indictment against him for alleged errors in the Judge Burns's instruction of the grand jury panel.  The United States explicitly incorporates by reference the briefing on this issue submitted in <u>United States v. Bermudez-</u>

<u>Jimenez</u>, 07CR1372-JAH, and <u>United States v. Martinez-Covarrubias</u>, 07CR0491-BTM.  The orders, denying this same motion, are attached as Exhibits 1 and 2.  This motion has been denied by every court to consider it, and the Court should deny it in this instance as well.  However, if the Court would like additional briefing, the United States will oblige.

   B.   **<u>DISCOVERY</u>**

      1.   **Items Which The Government Has Already Provided Or Will Voluntarily Provide**

         a.   The Government will disclose to Defendant and make available for inspection, copying or photographing:  any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent.  The Government will also to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

         b.   The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or

08cr1181-WQH

1   portions thereof, which are within the possession, custody or

2   control of the Government, and which are material to the

3   preparation of Defendant's defense or are intended for use by the

4   Government as evidence during its case-in-chief at trial, or were

5   obtained from or belong to Defendant;[1/]

6         c.   The Government will permit Defendant to

7   inspect and copy or photograph any results or reports of physical

8   or mental examinations, and of scientific tests or experiments, or

9   copies thereof, which are in the possession, custody or control of

10  the Government, the existence of which is known, or by the

11  exercise of due diligence may become known, to the attorney for

12  the Government, and which are material to the preparation of his

13  defense or are intended for use by the Government as evidence

14  during its case-in-chief at trial;[2/]

15        d.   The Government has furnished to Defendant a

16  copy of his prior criminal record, which is within its possession,

17  custody or control, the existence of which is known, or by the

18  exercise of due diligence may become known to the attorney for the

19  Government;

20  _____

21     [1/]   Rule 16(a)(1)(C) authorizes defendants to examine only
    those Government documents material to the preparation of their

22  defense against the Government's case-in-chief. <u>United States v.
    Armstrong</u>, 116 S. Ct. 1480 (1996). Further, Rule 16 does not

23  require the disclosure by the prosecution of evidence it intends
    to use in rebuttal. <u>United States v. Givens</u>, 767 F.2d 574 (9th

24  Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

25     [2/]   The Government does not have "to disclose every single
    piece of paper that is generated internally in conjunction with

26  scientific tests." <u>United States v. Iglesias</u>, 881 F.2d 1519
    (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1088 (1990).

27

28                      4

1         e.    The Government will disclose the terms of all

2  agreements (or any other inducements) with cooperating witnesses,

3  if any are entered into;

4         f.    The Government may disclose the statements of

5  witnesses to be called in its case-in-chief when its trial

6  memorandum is filed;[3/]

7         g.    The Government will disclose any record of

8  prior criminal convictions that could be used to impeach a

9  Government witness prior to any such witness' testimony;

10         h.    The Government will disclose in advance of

11  trial the general nature of other crimes, wrongs, or acts of

12  Defendant that it intends to introduce at trial pursuant to Rule

13  404(b) of the Federal Rules of Evidence;

14

15

16  _____

17     3/   Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. <u>United States v. Mills</u>, 641 F.2d 785, 789-790 (9th Cir.), <u>cert</u>. <u>denied</u>, 454 U.S. 902 (1981); <u>United States v. Dreitzler</u>, 577 F.2d 539, 553 (9th Cir. 1978), <u>cert</u>. <u>denied</u>, 440 U.S. 921 (1979); <u>United States v. Walk</u>, 533 F.2d 417, 418-419 (9th Cir. 1975). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. <u>United States v. Durham</u>, 941 F.2d 858 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. <u>United States v. Isigro</u>, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. <u>United States v. Bobadilla-Lopez</u>, 954 F.2d 519 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

08cr1181-WQH

28

1    i.    The Government acknowledges and recognizes its

2  continuing  obligation  to  disclose  exculpatory  evidence  and

3  discovery as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),

4  <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Jencks and Rules 12

5  and 16 of the Federal Rules of Criminal Procedure, and will abide

6  by their dictates.[4/]

7    **2.    <u>Items Which Go Beyond The Strictures Of Rule 16</u>**

8    **a.    <u>The Requests By The Defendants For Specific</u>**
   **<u>Brady</u> <u>Information Or General Rule 16</u>**
9    **<u>Discovery Should Be Denied</u>**

10  Defendant requests that the Government disclose all evidence

11  favorable to him, which tends to exculpate him, or which may be

12  relevant to any possible defense or contention they might assert.

13    It is well-settled that prior to trial, the Government must

14  provide a defendant in a criminal case with evidence that is both

15  favorable to the accused and material to guilt or punishment.

16  <u>Pennsylvania v. Richie</u>, 480 U.S. 39, 57 (1987); <u>United States v.</u>

17  <u>Agurs</u>, 427 U.S. 97 (1976); <u>Brady v. Maryland</u>, 373 U.S. 83, 87

18  (1963).   As the Court explained in <u>United States v. Agurs</u>, 427

19  U.S. 97, 104 (1976), "a fair analysis of the holding in <u>Brady</u>

20

21    [4/]    <u>Brady v. Maryland</u> requires the Government to produce all
22  evidence that is material to either guilt or punishment.  <u>Brady v.</u>
    <u>Maryland</u>, 373 U.S. 83 (1963).  The Government's failure to provide
23  the information required by <u>Brady</u> is constitutional error only if
    the information is material, that is, only if there is a
24  reasonable probability that the result of the proceeding would
    have been different had the information been disclosed.  <u>Kyles v.</u>
25  <u>Whitley</u>, 115 S. Ct. 1555 (1995).  However, neither <u>Brady</u> nor Rule
    16 require the Government to disclose inculpatory information to
26  the defense.   <u>United States v. Arias-Villanueva</u>, 998 F.2d 1491
    (9th Cir. 1993).
27

28    6

indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial." Thus, under <u>Brady</u>, "evidence is material <u>only</u> if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985) (emphasis added). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>Pennsylvania v. Richie</u>, 480 U.S. at 57 (quoting <u>United States v. Bagley</u>, 473 U.S. at 682).

The Supreme Court has repeatedly held that the <u>Brady</u> rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process. <u>United States v. Bagley</u>, 473 U.S. at 675, n. 6; <u>Weatherford v. Bursey</u>, 429 U.S. at 559; <u>United States v. Agurs</u>, 427 U.S. at 108. The Supreme Court's analysis of the limited scope and purpose of the <u>Brady</u> rule, as set forth in the <u>Bagley</u> opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel,[5/] but only to disclose evidence

---

[5/]    See <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976); <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972). <u>See also</u> <u>California v. Trombetta</u>, 467 U.S. 479, 488, n. 8 (1984). An interpretation of <u>Brady</u> to create a broad, constitutionally required right of discovery "would entirely alter the character and balance of our present system of criminal justice." <u>Giles v. Maryland</u>, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting). Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would

(continued...)

08cr1181-WQH

7

favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and **absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."**

United States v. Bagley, 473 U.S. at 675 (quoting United States v. Agurs, 427 U.S. at 108) (emphasis added); see also Pennsylvania v. Richie, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files."). Accordingly, the Government in this case will comply with the Brady mandate but rejects any affirmative duty to create or seek out evidence for the defense.

> **b.    Disclosure Of Witness Information Should Be Denied Except As Is Agreed To By The Government**

Regarding Government witnesses, the Government will provide Defendant with the following items prior to any such individual's trial testimony:

(1)  The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

---

[5]/(...continued)
impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgements.

1          (2)   All   relevant   exculpatory   evidence

2   concerning  the  credibility  or  bias  of  Government  witnesses  as

3   mandated by law; and,

4          (3)   Any record of prior criminal convictions

5   that could be used to impeach a Government witness.

6       The Government opposes disclosure of rap sheet information of

7   any Government witness prior to trial because of the prohibition

8   contained  in  the  Jencks  Act.   See  United States v. Taylor,

9   542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074

10  (1977).  Furthermore, any uncharged prior misconduct attributable

11  to Government witnesses, all promises made to and consideration

12  given  to  witnesses  by  the  Government,  and  all  threats  of

13  prosecution made to witnesses by the Government will be disclosed

14  if required by the doctrine of Brady v. Maryland, 373 U.S. 83

15  (1963) and Giglio v. United States, 450 U.S. 150 (1972).

16              c.   The Rough Notes Of Our Agents

17      Although the Government has no objection to Defendant's

18  motion for the preservation of agents' handwritten notes, we

19  object to their production at this time.  Further, the Government

20  objects to any pretrial hearing concerning the production of rough

21  notes.  If during any evidentiary proceeding, certain rough notes

22  become relevant, these notes will be made available.

23      Prior production of these notes is not necessary because they

24  are not "statements" within the meaning of the Jencks Act unless

25  they comprise both a substantially verbatim narrative of a

26  witness' assertions and they have been approved or adopted by the

27

28                              9                     08cr1181-WQH

1   witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir.

2   1980); <u>see also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32

3   (9th Cir. 1981); <u>United States v. Griffin</u>, 659 F.2d 932, 936-38

4   (9th Cir. 1981).

5   **d.    Government Reports, Summaries, And Memoranda**

6   Rule 16, in pertinent part, provides:

7   [T]his rule does not authorize the discovery or
    inspection of reports, memoranda, or other internal
8   government documents made by the attorney for the
    government or <u>other government agent in connection with</u>
9   <u>the investigating or prosecuting of the case</u>.

10  Rule 16(a)(2); <u>see also</u> <u>United States v. Sklaroff</u>, 323 F. Supp.

11  296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis

12  added); <u>United States v. Garrison</u>, 348 F. Supp. 1112, 1127-28

13  (E.D. La. 1972).

14  The Government, as expressed previously, recognizes and

15  embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S.

16  83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), Rule 16,

17  and the Jencks Act.[6]  We shall not, however, turn over internal

18  memoranda or reports which are properly regarded as work product

19  exempted from pretrial disclosure.[7]  Such disclosure is supported

20

21

22  _____

23  [6]    Summaries of witness interviews conducted by Government
    agents (DEA 6, FBI 302) are not Jencks Act statements.  <u>United</u>
    <u>States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).  The
24  production of witness interview is addressed in more detail below.

25  [7]    The Government recognizes that the possibility remains
    that some of these documents may become discoverable during the
26  course of the trial if they are material to any issue that is
    raised.
27
                                                        08cr1181-WQH
28                                  10

1    neither by the Rules of Evidence nor case law and could compromise

2    other areas of investigation still being pursued.

### e.    Defendants Are Not Entitled To Addresses And Phone Numbers Of Government Witnesses

Defendant requests the name and last known address of each prospective Government witness.  While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses.  See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).  A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the witnesses it expects to call at trial.  United States v. Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[8/]

---

[8/]    Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of trial.  18 U.S.C. § 3432.  See also United States v. Richter, 488 F.2d 170 (9th Cir. 1973)(holding that defendant must make an affirmative showing as to need and reasonableness of such discovery).  Likewise, agreements with witnesses need not be turned over prior to the testimony of the witness, United States v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Egger, 509 F.2d 745 (9th Cir.), cert. denied, 423 U.S. 842 (1975); United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

08cr1181-WQH

The Ninth Circuit addressed this issue in <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 966 (1980). In <u>Jones</u>, the court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of Government witnesses. <u>Id.</u> at 455. Several other Ninth Circuit cases have reached the same conclusion. <u>See, e.g.</u>, <u>United States v. Armstrong</u>, 621 F.2d 951, 1954 (9th Cir. 1980); <u>United States v. Sukumolachan</u>, 610 F.2d at 687; <u>United States v. Paseur</u>, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness.").

### f.   **Motion Pursuant To Rule 12(d)**

Defendant is hereby notified that the Government intends to use in its case-in-chief at trial all evidence which Defendant is entitled to discover under Rule 16, subject to any relevant limitations prescribed in Rule 16.

### g.   **Defendant's Motion For Disclosure Of Oral Statements Made To Non-Government Witnesses Should Be Denied**

Defendants are not entitled to discovery of oral statements made by them to persons who were not - at the time such statements were made - known by the defendants to be Government agents. The plain language of Rule 16 supports this position. Rule 16 unambiguously states that defendants are entitled to "written and recorded" statements made by them. The rule limits discovery of oral statements to "that portion of any written record containing the substance of any relevant oral statement made by the defendant

08cr1181-WQH

whether before or after arrest in response to interrogation by any person then known to the defendant to be a Government agent," and "the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a Government agent if the Government intends to use that statement at trial." The statutory language clearly means that oral statements are discoverable only in very limited circumstances, and then, only when made to a known Government agent.

### h.    Personnel Files of Federal Agents

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." United States v. Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case. In United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review the personnel files of federal law enforcement witnesses. In Jennings, the Ninth Circuit

1    found that the present Department of Justice procedures providing

2    for a review of federal law enforcement witness personnel files by

3    the agency maintaining them is sufficient compliance with

4    <u>Henthorn</u>.   <u>Jennings</u>, 960 F.2d at 1492.   In this case, the

5    Government will comply with the procedures as set forth in

6    <u>Jennings</u>.

7        Finally, the Government has no duty to examine the personnel

8    files of state and local officers because they are not within the

9    possession, custody or control of the Federal Government.   <u>United</u>

10   <u>States v. Dominquez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

11                 **i.   <u>Reports Of Witness Interviews</u>**

12       Defendant has requested the production of all reports

13   generated in connection with witness interviews.   To date, the

14   Government does not have any reports regarding witness interviews

15   or otherwise that have not been turned over to Defendant.

16   However, to the extent that such additional reports regarding

17   witness interviews are generated, the information sought by

18   Defendant is not subject to discovery under the Jencks Act, 18

19   U.S.C., Section 3500.   In <u>Jencks v. United States</u>, 353 U.S. 657

20   (1957), the Supreme Court held that a criminal defendant had a due

21   process right to inspect, for impeachment purposes, statements

22   which had been made to government agents by government witnesses.

23   Such statements were to be turned over to the defense at the time

24   of cross-examination if their contents related to the subject

25   matter of the witness' direct testimony, and if a demand had been

26   made for specific statements of the witness.   <u>Id</u>. at 1013-15.   The

27

28                             14                          08cr1181-WQH

1  Jencks Act, 18 U.S.C., Section 3500, was enacted in response to

2  the Jencks decision.   As the Supreme Court stated in an early

3  interpretation of the Jencks Act:

> Not only was it strongly feared that disclosure of memoranda
> containing the investigative agent's interpretations and
> impressions might reveal the inner workings of the
> investigative process and thereby injure the national
> interest, but it was felt to be grossly unfair to allow the
> defense to use statements to impeach a witness which could
> not fairly be said to be the witness' own rather than the
> product of the investigator's selections, interpretations,
> and interpolations.

9  Palermo v. United States, 360 U.S. 343, 350 (1959).   Having

10  examined the legislative history and intent behind enactment of

11  the Jencks Act, the Court concluded, "[t]he purpose of the Act,

12  its fair reading and its overwhelming legislative history compel

13  us to hold that statements of a government witness made to an

14  agent of the government which cannot be produced under the terms

15  of 18 U.S.C. § 3500, cannot be produced at all."

16      Reports generated in connection with a witness's interview

17  session are only subject to production under the Jencks Act if the

18  witness signed the report, or otherwise adopted or approved the

19  contents of the report.   See 18 U.S.C. § 3500(e)(1); see also

20  United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985)

21  ("The Jencks Act is, by its terms, applicable only to writings

22  which are signed or adopted by a witness and to accounts which are

23  substantially verbatim recitals of a witnesses' oral

24  statements."); United States v. Friedman, 593 F.2d 109, 120 (9th

25  Cir. 1979) (an interview report that contains a summary of a

26  witness' statements is not subject to discovery under the Jencks

27

28                                    15

08cr1181-WQH

1  Act); <u>United States v. Augenblick</u>, 393 U.S. 248, 354-44 (1969)

2  (rough notes of witness interview not a "statement" covering

3  entire interview). Indeed, "both the history of the [Jencks Act]

4  and the decisions interpreting it have stressed that for

5  production to be required, the material should not only reflect

6  the witness' own words, but should also be in the nature of a

7  complete recital that eliminates the possibility of portions being

8  selected out of context." <u>United States v. Bobadilla-Lopez</u>, 954

9  F.2d 519, 522 (9th Cir. 1992). As recognized by the Supreme

10  Court, "the [Jencks Act] was designed to eliminate the danger of

11  distortion and misrepresentation inherent in a report which merely

12  selects portions, albeit accurately, from a lengthy oral recital."

13  <u>Id</u>. The defendant should not be allowed access to reports which

14  they cannot properly use to cross-examine the Government's

15  witnesses.

### j.   Expert Witnesses

17  The Government will disclose to Defendant the name,

18  qualifications, and a written summary of testimony of any expert

19  the Government intends to use during its case-in-chief at trial

20  three weeks before the trial date.

### k.   Other Discovery Requests

22  To the extent that the above does not answer all of

23  Defendant's discovery requests, the Government opposes the motions

24  on the grounds that there is no authority requiring us to provide

25  such material.

26  //

27

28

08cr1181-WQH

1   C.    **LEAVE TO FILE ADDITIONAL MOTIONS**

2        The Government does not oppose Defendant's request for leave

3   to file further motions as long as such motions are based on newly

4   discovered evidence and such leave is granted with equal force to

5   the Government.

6                                    **IV**

7                                **CONCLUSION**

8        For the foregoing reasons, the Government requests that

9   Defendant's motions be denied where indicated.

10        DATED: July 14, 2008.

11                                    Respectfully submitted,

12                                    KAREN P. HEWITT
                                      United States Attorney
13
                                      s/ Peter J. Mazza
14                                    PETER J. MAZZA
                                      Assistant U.S. Attorney
15

16

17

18

19

20

21

22

23

24

25

26

27                                                08cr1181-WQH

28                          17

1        UNITED STATES DISTRICT COURT

2        SOUTHERN DISTRICT OF CALIFORNIA

3  UNITED STATES OF AMERICA,        )        Case No. 08CR1181-WQH
                                     )
4                  Plaintiff,        )
                                     )
5            v.                      )
                                     )        CERTIFICATE OF SERVICE
6  ANGEL RIOS,                       )
                                     )
7                                    )
                   Defendant.        )
8  _____)

9  IT IS HEREBY CERTIFIED THAT:

10       I, PETER J. MAZZA, am a citizen of the United States and am
   at least eighteen years of age.  My business address is 880 Front
11 Street, Room 6293, San Diego, California 92101-8893.

12       I am not a party to the above-entitled action.  I have caused
   service of the Government's Response in Opposition to Defendant's
13 Discovery motion on the following parties by electronically filing
   the foregoing with the Clerk of the District Court using its ECF
14 System, which electronically notifies them.

15       1. Timothy Garrison, Esq.

16       I declare under penalty of perjury that the foregoing is true
   and correct.
17
         Executed on July 14, 2008.
18
                                 s/ Peter J. Mazza
19                               PETER J. MAZZA

20

21

22

23

24

25

26

27
                                                      08cr1181-WQH
28                           18

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 07cr0491 BTM |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |
| v. | |
| MANUEL MARTINEZ-COVARRUBIAS, | |
| Defendant. | |

Defendant Manuel Martinez-Covarrubias has filed a Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction.  For the reasons discussed below, Defendant's motion is **DENIED**.

## I.  BACKGROUND

On February 28, 2007, a federal grand jury empaneled in this district on January 11, 2007 returned a two-count Indictment charging Defendant with Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

## II.  CHALLENGED INSTRUCTIONS

A.  Video Presentation

Prior to the selection of the grand jury jury, the potential grand jurors were shown a video titled "The Federal Grand Jury: The People's Panel."  The video's apparent purpose is to educate potential grand jurors about their civic duty to serve, the function of the grand jury, and their responsibilities as grand jurors.

1

07cr0491 BTM

1    The video presents the story of a woman who serves on a grand jury for the first time.

2    In one scene, after the woman receives the summons, her son tells her what he has learned

3    about the function of a grand jury. Reading from a civics book, the son states that if the "jury

4    finds that probable cause does exist, then it will return a written statement of charges called

5    an indictment . . . ."

6    When charging the impaneled grand jury, the fictional judge explains that if the grand

7    jury finds that there is probable cause, "you will return an indictment."

8    Later, the foreperson tells the other grand jurors that there are two purposes of the

9    grand jury: (1)  when there is a finding of probable cause, to bring the accused to trial fairly

10   and swiftly; and (2) to protect the innocent against unfounded prosecution.

11

12   B. <u>Voir Dire Session</u>

13   Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns,

14   explained the function of the grand jury to the prospective jurors as follows: "The grand jury

15   is determining really two factors: 'Do we have a reasonable – collectively, do we have a

16   reasonable belief that a crime was committed? And second, do we have a reasonable belief

17   that the person that they propose that we indict committed the crime?'  If the answer is 'yes'

18   to both of those, then the case should move forward.  If the answer to either of the questions

19   is 'no,' then the grand jury should hesitate and not indict." App. 2 to Gov't Response at 8.

20   During voir dire, Judge Burns explained to the potential grand jurors that the

21   presentation of the evidence to the grand jury was going to be one-sided.  <u>Id.</u> at 14.

22   However, Judge Burns stated, "Now, having told you that, my experience is that the

23   prosecutors don't play hide-the-ball.  If there's something adverse or that cuts against the

24   charge, you'll be informed of that.  They have a duty to do that."  <u>Id.</u> at 14-15.

25   One prospective juror, a retired clinical social worker, indicated that he did not believe

26   that any drugs should be considered illegal.  <u>Id.</u> at 16.  He also stated that he had strong

27   feelings about immigration cases and thought the government was spending a lot of time

28   unnecessarily persecuting people.  <u>Id.</u>  The following exchange occurred:

2

The Court:  Now, the question is can you fairly evaluate those cases?  Just as the Defendant ultimately is entitled to a fair trial and the person that's accused is entitled to a fair appraisal of the evidence of the case that's in front of you, so, too, is the United States entitled to a fair judgment.  If there's probable cause, then the case should go forward.  I wouldn't want you to say, "Well, yeah, there's probable cause.  But I still don't like what our Government is doing.  I disagree with these laws, so I"m not going to vote for it to go forward."  If that's your frame of mind, then probably you shouldn't serve.  Only you can tell me that.

Prospective Juror: Well, I think I may fall in that category.

The Court: In the latter category?

Prospective Juror: Yes.

The Court: Where it would be difficult for you to support a charge even if you thought the evidence warranted it?

Prospective Juror: Yes.

The Court: I'm going to excuse you, then.  I appreciate your honest answers.

Id. at 16-17.

Later, another prospective juror, a real estate agent, expressed a concern regarding the disparity between state and federal law with respect to medical marijuana.  Judge Burns responded:

Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things.  We'd ask you to also abide by that.  We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and that rapists and murderers, not people using drugs, should go to jail.  Id. at 25-26.  The following exchange ensued:

The Court: I think rapists and murderers ought to go to jail too.  It's not for me as a judge to say what the law is.  We elect legislators to do that.  We're sort of at the end of the pipe on that.  We're charged with enforcing the laws that Congress gives us.
     I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make.  But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed.  It's not for me to say, "Well, I don't like it.  So I'm not going to follow it here."
     You'd have a similar obligation as a grand juror even though you might

3

07cr0491 BTM

have to grit your teeth on some cases.  Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana.  I don't know if that's it but you'd vote against criminalizing some drugs.

That's not what your prerogative is here.  Your prerogative instead is to act like a judge and to say, "All right.  This is what I've got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does it seem to me that this person's involved?  It does."  And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.

I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it."  I don't know what your frame of mind is.  You have to tell me about that.

Prospective Juror: I'm not comfortable with it.

The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?

Prospective Juror: It would depend upon the case.

The Court: Is there a chance that you would do that?

Prospective Juror: Yes.

The Court: I appreciate your answers.  I'll excuse you at this time.

Id. at 26-28.

Later, a potential juror said that he was "soft" on immigration because he had done volunteer work with immigrants in the field, but that he could be fair and objective.  Judge Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're not about trying to change people's philosophies and attitudes here.  That's not my business.  But what I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here."  Id. at 61.  This juror was not excused.

C.  Charge to Impaneled Grand Jury

After the grand jury was impaneled, Judge Burns gave further instructions regarding the responsibilities of the grand jurors.

With respect to the enforcement of federal laws, Judge Burns explained:

But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is [sic] criminal is not up to you.  That's a judgment that Congress makes.

And if you disagree with that judgment made by Congress, then your

4

07cr0491 BTM

1    option is not to say, 'Well, I'm going to vote against indicting even though I
     think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment]
2    even though the evidence may be insufficient.'  Instead, your obligation is to
     contact your congressman or advocate for a change in the laws, but not to
3    bring your personal definition of what the law ought to be and try to impose that
     through applying it in a grand jury setting.
4           Furthermore, when you're deciding whether to indict or not to indict, you
     shouldn't be concerned with punishment that attaches to the charge.  I think
5    I also alluded to this in the conversation with one gentleman.  Judges alone
     determine punishment.  We tell trial juries in criminal cases that they're not to
6    be concerned with the matter of punishment either.  Your obligation at the end
     of the day is to make a business-like decision on facts and apply those facts
7    to the law as it's explained and read to you.

8    App. 1 to Gov't Response at 8-9.

9         With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most

10   instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they

11   may be asking you to do if they're aware of that evidence." Id. at 20.   Later, Judge Burns

12   said, "If past experience is any indication of what to expect in the future, then you can expect

13   that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that

14   they'll act in good faith in all matters presented to you." Id. at 27.

15

16                            **III.  DISCUSSION**

17

18   A.  Instructions Re: Role of Grand Jury

19        Defendant contends that statements made in the video, Judge Burns' instructions, and

20   the dismissal of two potential jurors deprived Defendant of the traditional functioning of the

21   Grand Jury.  Specifically, Defendant claims that the challenged statements in combination

22   with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising

23   their constitutional discretion to not indict even if probable cause supports the charge."

24   (Def.'s Reply Br. 8.)  Looking at the video presentation and the instructions as a whole, the

25   Court disagrees.

26        Judge Burns made it clear that the jurors were not to refuse to indict in the face of

27   probable cause *on the ground that they disagreed with Congress's decision to criminalize*

28   *certain activity.*  Judge Burns did not err in doing so.  In United States v. Navarro-Vargas, 408

                                        5                              07cr0491 BTM

1  F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury

2  instruction that states: "You cannot judge the wisdom of the criminal laws enacted by

3  Congress, that is, whether or not there should or should not be a federal law designating

4  certain activity as criminal.  That is to be determined by Congress and not by you."   The

5  majority opinion observed that the instruction was not contrary to any long-standing historical

6  practice surrounding the grand jury and noted that shortly after the adoption of the Bill of

7  Rights, federal judges charged grand juries with a duty to submit to the law and to strictly

8  enforce it.  Id. at 1193,1202-03.   "We cannot say that the grand jury's power to judge the

9  wisdom of the laws is so firmly established that the district court must either instruct the jury

10  on its power to nullify the laws or remain silent."  Id. at 1204.

11        A prohibition against judging the wisdom of the criminal laws enacted by Congress

12  amounts to the same thing as a prohibition against refusing to indict based on disagreement

13  with the laws.  It is true that Judge Burns used stronger language that, viewed in isolation,

14  could be misconstrued as requiring the return of an indictment in *all* cases where probable

15  cause can be found.  Particularly troubling is the following statement made to the real estate

16  agent: "Your prerogative instead is to act like a judge and to say, 'All right.  This is what I've

17  got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does

18  it seem to me that this person's involved?  It does.'  *And then your obligation*, if you find

19  those things to be true, *would be to vote in favor of the case going forward.*"  App. 2 to Gov't

20  Response at 26.  However, viewed in context, Judge Burns was not mandating the issuance

21  of an indictment in *all* cases where probable cause is found; he was explaining that

22  disagreement with the laws should not be an obstacle to the issuance of an indictment.[1]

23        Furthermore, the word "obligation" is not materially different than the word "should."

24  _____

25   [1]  The Supreme Court has recognized that a grand jury is not required to indict in
    every case where probable cause exists.  In Vasquez v. Hillery, 474 U.S. 254, 263 (1986),
26  the Supreme Court explained: "The grand jury does not determine only that probable cause
    exists to believe that a defendant committed a crime, or that it does not.  In the hands of the
27  grand jury lies the power to charge a greater offense or a lesser offense; numerous counts
    or a single count; and perhaps most significant of all, a capital offense or a noncapital offense
28  - all on the basis of the same facts.  Moreover, '[t]he grand jury is not bound to indict in every
    case where a conviction can be obtained.'  United States v. Ciambrone, 601 F.2d 616, 629
    (2d Cir. 1979) (Friendly, J., dissenting)."

07cr0491 BTM

1    In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors

2    "should" indict if they find probable cause does not violate the grand jury's independence.

3    The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on

4    the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds

5    probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci,

6    299 F.3d 1156, 1159 (9th Cir. 2002)).  The dissenting opinion notes that the word "should"

7    is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction

8    And Language Guide 931 (1999))(emphasis added).[2]

9         Defendant points to the language in the video where first the son, then the judge, state

10    that if there is a finding of probable cause, the grand jury "will" return an indictment.

11    However, no emphasis is placed on the word "will."  As spoken by the actors, the statements

12    are not directives, mandating the return of an indictment upon the finding of probable cause,

13    but, rather, descriptions of what is expected to occur.  Similarly, the foreperson's statement

14    that one of the purposes of the grand jury is to bring an accused to trial when there is a

15    finding of probable cause is a general statement of the grand jury's function, not a command

16    to return an indictment in *every* case where probable cause exists.

17         Defendant also argues that Judge Burns improperly forbade the grand jury from

18    considering the potential punishment for crimes when deciding whether or not to indict.

19    Defendant relies on the following statement:

20         Well, those things – the consequences of your determination shouldn't concern
      you in the sense that penalties or punishment, things like that – we tell trial
21    jurors, of course, that they cannot consider the punishment or the
      consequence that Congress has set for these things.  *We'd ask you to also*
22    *abide by that.*  We want you to make a business-like decision and look at the
      facts and make a determination of whether there was a probable cause.
23

24    App. 2 to Gov't Response at 25.  (Emphasis added.)  Although Judge Burns stated that trial

25    jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors.

26    Instead, Judge Burns *requested* that the grand jurors follow the same principle.  Similarly,

27    _____

28         [2] Defendant concedes that at other times Judge Burns instructed that upon a finding
      of probable cause, the case "should" go forward.  App. 2 to Gov't Response at 8, 17; App.
      1 to Gov't Response at 4, 23.

                                              7

during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment

that attaches to the charge."  App. 1 to Gov't Response at 8.  (Emphasis added.)

In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit

upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not*

be concerned about punishment in the event of conviction; judges alone determine

punishment." (Emphasis added.)  Consistent with the reasoning in Marcucci and Navarro-

Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on

considering punishment and was therefore constitutional.  The instructions given by Judge

Burns regarding the consideration of punishment were substantially the same as the

instruction in Cortez-Rivera.

Neither Judge Burns nor the video pronounced a general prohibition against jurors

exercising their discretion to refuse to return an indictment in the face of probable cause.

In any case, "history demonstrates that grand juries do not derive their independence from

a judge's instruction.  Instead they derive their independence from an unreviewable power

to decide whether to indict or not."  Navarro-Vargas II, 408 F.3d at 1204.

Both the video and Judge Burns informed the jurors about the utmost secrecy of the

grand jury proceedings and their deliberations.  The video and Judge Burns also emphasized

to the jury that they were independent of the Government and did not have to return an

indictment just because the Assistant U.S. Attorney asked them to.  In the video, the judge

expressed approval at the fact that the grand jury did not return an indictment as to the

alleged driver of the get-away car. Judge Burns characterized the jury as "a buffer between

our Government's ability to accuse someone of a crime and then putting that person through

the burden of standing trial."  App. 1 to Gov't Response at 26.  Judge Burns also told the

jurors that they were not to be a "rubber stamp" and were expected to depend on their

independent judgment.  Id, at 27.

Even though the jurors were not explicitly instructed that they could use their

discretion to refuse to return an indictment, they retained that power by virtue of the secrecy

surrounding their deliberations and the unreviewability of their decisions.  Nothing that Judge

1   Burns said or did impinged on the jurors' independence in this regard.

2         Defendant counters that the dismissal of the two potential jurors undermined the grand

3   jury's independence from the very start.  According to Defendant, when Judge Burns

4   dismissed the jurors, the message was clear that they were to indict in every case where

5   there was probable cause or they would be excused.  Defendant contends that the remaining

6   grand jurors could not have understood Judge Burns' actions in any other way.  (Reply Br.

7   18.)  The Court disagrees.

8         Upon reading the voir dire transcript, it is apparent that the jurors were excused

9   because they were biased against the government with respect to a whole category of

10  criminal laws, not simply because they were independent-minded and might refuse to return

11  an indictment in a case where probable cause exists.  Judge Burns explained to the clinical

12  social worker, "We're all products of our experience.  We're not going to try to disabuse you

13  of experiences or judgments that you have.  What we ask is that you not allow those to

14  control invariably the outcome of the cases coming in front of you; that you look at the cases

15  fresh, you evaluate the circumstances, listen to the witness testimony, and then make an

16  independent judgment."  App. 2 to Gov't Response at 15.  Judge Burns excused the social

17  worker after he admitted that it would be difficult for him to return an indictment in drug or

18  immigration cases.

19        Similarly, the real estate agent expressed that he thought drugs should be legal and

20  that people using drugs should not be sent to jail.  App. 2 to Gov't Response at 25-26.   The

21  real estate agent said that he was not comfortable with indicting in drug cases.  Although he

22  did not say that he would refuse to indict in all cases involving drugs, he admitted that

23  because of his beliefs, there was a chance that he would refuse to return an indictment in a

24  drug case even though there was probable cause.  Id. at 27.  The real estate agent's

25  responses established that he had serious concerns regarding the criminalization of drugs

26  and could not be impartial with respect to these cases

27        That bias was the reason for the dismissal of the first two potential  jurors is confirmed

28  by the dismissal of a third potential juror.  This juror stated that he had a strong bias for the

1    Government.  App. 2 to Gov't Response at 38.  Judge Burns cautioned the juror that he

2    should not "automatically defer to [the Government] or surrender the function and give the

3    indictment decision to the U.S. Attorney.  You have to make that independently." Id. at 40.

4    Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of

5    each case independently based on the evidence presented.  Id. at 42-43.  Demonstrating his

6    even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would

7    say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.'  I

8    wouldn't want you to do that." Id. at 44.

9         A reasonable grand juror would not have interpreted the dismissal of the first two

10   potential jurors as a message that they must indict in all cases where probable cause is

11   found or risk being excused from service.  It was apparent to the other jurors that a lack of

12   impartiality with respect to certain types of cases, *not* independence, was the reason for all

13   three dismissals.

14        In sum, Judge Burns did not err in instructing the grand jurors that they were not to

15   refuse to return an indictment on the ground that they disagreed with the laws.  Furthermore,

16   nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to

17   refuse to indict for any reason whatsoever.  As the Ninth Circuit noted in Navarro-Vargas II,

18   408 F.3d at 1204, the grand jury's independence results from the secrecy of their

19   deliberations and the unreviewability of their decisions.  Nothing in the record shows any

20   impediment to that independence.

21

22   B.   Instructions re: Assistant U.S. Attorneys

23        Defendant also contends that Judge Burns committed structural error by making

24   comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against the

25   charge."  According to Defendant, not only did Judge Burns' comments contradict United

26   States v. Williams, 504 U.S. 36 (1992), but also discouraged independent investigation,

27   leading to inaccurate probable cause determinations.  Defendant reasons that given Judge

28   Burns' comments, the grand jurors would have assumed that if the prosecutor did not present

1    any exculpatory evidence, then none exists, rendering further investigation a waste of time.

2         Under Williams, prosecutors do not have a duty to present substantial exculpatory

3    evidence to the grand jury.    Although Assistant U.S. Attorneys apparently have an

4    employment duty to disclose "substantial evidence that directly negates the guilt" of a subject

5    of investigation (United States Attorneys' Manual § 9-11.233), it does not appear that they

6    have a broad duty to disclose all evidence that may be deemed exculpatory or adverse to

7    the Government's position.

8         Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys

9    to present adverse evidence were inaccurate.    However, Judge Burns' comments do not rise

10   to the level of structural error.    As discussed above, the video and Judge Burns stressed that

11   the grand jury was independent of the Government.    The video and Judge Burns also

12   explained to the jury that they could direct the Assistant U.S. Attorney to subpoena additional

13   documents or witnesses.    App. 1 to Gov't Response at 11, 24.    The jurors were also told

14   about their right to pursue their own investigation, even if the Assistant U.S. Attorney

15   disagrees with the grand jury's decision to pursue the subject.    Id. at 12.

16        In light of the foregoing instructions, the Court does not agree that the grand jurors

17   would assume that if the Government did not present any exculpatory evidence, none exists.

18   A reasonable juror would understand that the Assistant U.S. Attorney may not be aware of

19   certain exculpatory evidence, whether due to legitimate circumstances or inadequate

20   investigation, and that further investigation by the grand jury may be needed to properly

21   evaluate the evidence before them.    Furthermore, Judge Burns told the jury that "in *most*

22   instances" the U.S. Attorneys are duty-bound to present exculpatory evidence.    App. 1 to

23   Gov't Response at 20.    Based on this qualifying language, the grand jurors would have

24   understood that the prosecutor is not always bound to present exculpatory evidence.    Thus,

25   "the structural protections of the grand jury" have not "been so compromised as to render the

26   proceedings fundamentally unfair."    Bank of Nova Scotia v. United States, 487 U.S. 250, 257

27   (1988).

28        If Defendant can establish that the Government in fact knew of exculpatory evidence

11                                                          07cr0491 BTM

1  that was not presented to the grand jury and that this failure to present exculpatory evidence,

2  in conjunction with Judge Burns' comments, "substantially influenced the grand jury's

3  decision to indict" or raises "grave doubt" that the decision to indict was free from the

4  substantial influence of such events, the Court may dismiss the indictment under its

5  supervisory powers. <u>Bank of Nova Scotia</u>, 487 U.S. at 256. Therefore, the Court will grant

6  Defendant leave to conduct discovery regarding what evidence was presented to the grand

7  jury. If, based upon the discovery, Defendant can establish that he suffered actual prejudice,

8  Defendant may renew his motion to dismiss the indictment.

9

10                                      **IV.  CONCLUSION**

11        For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due

12  to Erroneous Grand Jury Instruction is **DENIED WITHOUT PREJUDICE**.

13

14  **IT IS SO ORDERED.**

15

16  DATED:  October 11, 2007

17

18                                      Honorable Barry Ted Moskowitz
                                         United States District Judge

19

20

21

22

23

24

25

26

27

28

12

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

8   UNITED STATES OF AMERICA,            CASE NO. 07cr1372 JAH

9                          Plaintiff,    **AMENDED ORDER DENYING**
                                         **DEFENDANT'S MOTION TO**
10       v.                              **DISMISS THE INDICTMENT**

11  DIANA JIMENEZ-BERMUDEZ,

12                         Defendant.

13

14          Defendant Diana Jimenez-Bermudez has filed a Motion to Dismiss the Indictment

15  Due to Erroneous Grand Jury Instruction.  For the reasons discussed below, Defendant's

16  motion is **DENIED**.

17                          **I.  BACKGROUND**

18          On February 28, 2007, a federal grand jury empaneled in this district on January

19  11, 2007 returned a two-count Indictment charging Defendant with Importation of

20  Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and Possession of

21  Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

22                     **II.  CHALLENGED INSTRUCTIONS**[1]

23  **A.  Voir Dire Session**

24          Before commencing voir dire, the empaneling judge, the Hon. Larry A. Burns,

25  explained the function of the grand jury to the prospective jurors as follows: "The grand

26  _____

27          [1]In her reply brief, Defendant makes a passing reference to the fact that the grand
    jurors were shown a video presentation on the role of the grand jury, however there is no
28  substantive challenge to the use of the video, and thus use of the video will not be
    discussed in depth herein.

1    jury is determining really two factors: 'Do we have a reasonable – collectively, do we have

2    a reasonable belief that a crime was committed? And second, do we have a reasonable

3    belief that the person that they propose that we indict committed the crime?' If the

4    answer is 'yes' to both of those, then the case should move forward. If the answer to either

5    of the questions is 'no,' then the grand jury should hesitate and not indict." App. 2 to

6    Gov't Response at 8.

7         During voir dire, Judge Burns explained to the potential grand jurors that the

8    presentation of the evidence to the grand jury was going to be one-sided. <u>Id.</u> at 14.

9    However, Judge Burns stated, "Now, having told you that, my experience is that the

10   prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the

11   charge, you'll be informed of that. They have a duty to do that." <u>Id.</u> at 14-15.

12        One prospective juror, a retired clinical social worker, indicated that he did not

13   believe that any drugs should be considered illegal. <u>Id.</u> at 16. He also stated that he had

14   strong feelings about immigration cases and thought the government was spending a lot

15   of time unnecessarily persecuting people. <u>Id.</u> The following exchange occurred:

16        The Court: Now, the question is can you fairly evaluate those cases? Just
          as the Defendant ultimately is entitled to a fair trial and the person that's
17        accused is entitled to a fair appraisal of the evidence of the case that's in
          front of you, so, too, is the United States entitled to a fair judgment. If
18        there's probable cause, then the case should go forward. I wouldn't want you
          to say, "Well, yeah, there's probable cause. But I still don't like what our
19        Government is doing. I disagree with these laws, so I'm not going to vote
          for it to go forward." If that's your frame of mind, then probably you
20        shouldn't serve. Only you can tell me that.

21        Prospective Juror: Well, I think I may fall in that category.

22        The Court: In the latter category?

23        Prospective Juror: Yes.

24        The Court: Where it would be difficult for you to support a charge even if
          you thought the evidence warranted it?
25
          Prospective Juror: Yes.
26
          The Court: I'm going to excuse you, then. I appreciate your honest answers.
27
     <u>Id.</u> at 16-17.
28
          Later, another prospective juror, a real estate agent, expressed a concern regarding

2

the disparity between state and federal law with respect to medical marijuana.  Judge

Burns responded:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the consequence that Congress has set for these things.  We'd ask you to also abide by that.  We want you to make a business-like decision and look at the facts and make a determination of whether there was a [sic] probable cause.

Id. at 25.

Subsequently, the prospective juror stated that he felt that drugs should be legal and

that rapists and murderers, not people using drugs, should go to jail.  Id. at 25-26.  The

following exchange ensued:

> The Court: I think rapists and murderers ought to go to jail too.  It's not for me as a judge to say what the law is.  We elect legislators to do that.  We're sort of at the end of the pipe on that.  We're charged with enforcing the laws that Congress gives us.
>
> I can tell you sometimes I don't agree with some of the legal decisions that are indicated that I have to make.  But my alternative is to vote for someone different, vote for someone that supports the policies I support and get the law changed.  It's not for me to say, "Well, I don't like it.  So I'm not going to follow it here."
>
> You'd have a similar obligation as a grand juror even though you might have to grit your teeth on some cases.  Philosophically, if you were a member of congress, you'd vote against, for example, criminalizing marijuana.  I don't know if that's it but you'd vote against criminalizing some drugs.
>
> That's not what your prerogative is here.  Your prerogative instead is to act like a judge and to say, "All right.  This is what I've got to deal with objectively.  Does it seem to me that a crime was committed?  Yes.  Does it seem to me that this person's involved?  It does."  And then your obligation, if you find those things to be true, would be to vote in favor of the case going forward.
>
> I can understand if you tell me, "Look, I get all that, but I just can't do it or I wouldn't do it."  I don't know what your frame of mind is.  You have to tell me about that.
>
> Prospective Juror: I'm not comfortable with it.
>
> The Court: Do you think you'd be inclined to let people go on drug cases even though you were convinced there was probable cause they committed a drug offense?
>
> Prospective Juror: It would depend upon the case.
>
> The Court: Is there a chance that you would do that?
>
> Prospective Juror: Yes.
>
> The Court: I appreciate your answers.  I'll excuse you at this time.

07cr1372 JAH

Id. at 26-28.

Later, a potential juror said that he was "soft" on immigration because he had done volunteer work with immigrants in the field, but that he could be fair and objective. Judge Burns stated: "As you heard me explain earlier to one of the prospective grand jurors, we're not about trying to change people's philosophies and attitudes here. That's not my business. But what I have to insist on is that you follow the law that's given to us by the United States Congress. We enforce the federal laws here." Id. at 61. This juror was not excused.

**B. Charge to Impaneled Grand Jury**

After the grand jury was impaneled, Judge Burns gave further instructions regarding the responsibilities of the grand jurors.

With respect to the enforcement of federal laws, Judge Burns explained:

> But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is [sic] criminal is not up to you. That's a judgment that Congress makes.
> And if you disagree with that judgment made by Congress, then your option is not to say, 'Well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of [indictment] even though the evidence may be insufficient.' Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.
> Furthermore, when you're deciding whether to indict or not to indict, you shouldn't be concerned with punishment that attaches to the charge. I think I also alluded to this in the conversation with one gentleman. Judges alone determine punishment. We tell trial juries in criminal cases that they're not to be concerned with the matter of punishment either. Your obligation at the end of the day is to make a business-like decision on facts and apply those facts to the law as it's explained and read to you.

App. 1 to Gov't Response at 8-9.

With respect to exculpatory evidence, Judge Burns stated: "As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." Id. at 20. Later, Judge Burns said, "If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you." Id. at 27.

# III.  DISCUSSION

## A.  Instructions Re: Role of Grand Jury

Defendant contends that Judge Burns' instructions and the dismissal of two potential jurors deprived Defendant of the traditional functioning of the Grand Jury. Specifically, Defendant claims that the challenged statements in combination with the dismissal of the two potential jurors "flatly prohibited grand jurors from exercising their constitutional discretion to not indict even if probable cause supports the charge." (Def.'s Reply Br. 8.)  Looking at the instructions as a whole, the Court disagrees.

Judge Burns made it clear that the jurors were not to refuse to indict in the face of probable cause *on the ground that they disagreed with Congress's decision to criminalize certain activity*.  Judge Burns did not err in doing so.  In United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) ("Navarro-Vargas II"), the Ninth Circuit upheld the model grand jury instruction that states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.  That is to be determined by Congress and not by you."  The majority opinion observed that the instruction was not contrary to any long-standing historical practice surrounding the grand jury and noted that shortly after the adoption of the Bill of Rights, federal judges charged grand juries with a duty to submit to the law and to strictly enforce it.  Id. at 1193, 1202-03.  "We cannot say that the grand jury's power to judge the wisdom of the laws is so firmly established that the district court must either instruct the jury on its power to nullify the laws or remain silent."  Id. at 1204.

A prohibition against judging the wisdom of the criminal laws enacted by Congress amounts to the same thing as a prohibition against refusing to indict based on disagreement with the laws.  It is true that Judge Burns used stronger language that, viewed in isolation, could be misconstrued as requiring the return of an indictment in *all* cases where probable cause can be found.  Particularly troubling is the following statement made to the real estate agent: "Your prerogative instead is to act like a judge and to say, 'All right.  This is what I've got to deal with objectively.  Does it seem to me that a crime

was committed? Yes. Does it seem to me that this person's involved? It does.' *And then your obligation*, if you find those things to be true, *would be to vote in favor of the case going forward*." App. 2 to Gov't Response at 26. However, viewed in context, Judge Burns was not mandating the issuance of an indictment in *all* cases where probable cause is found; he was explaining that disagreement with the laws should not be an obstacle to the issuance of an indictment.[2]

Furthermore, the word "obligation" is not materially different than the word "should." In Navarro-Vargas II, the majority opinion held that the model instruction that the jurors "should" indict if they find probable cause does not violate the grand jury's independence. The majority explained, "As a matter of pure semantics, it does not 'eliminate discretion on the part of the grand jurors,' leaving room for the grand jury to dismiss even if it finds probable cause." Navarro-Vargas II, 408 F.3d at 1205 (quoting United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002)). The dissenting opinion notes that the word "should" is used "to express a duty [or] *obligation*." Id. at 1121 (quoting The Oxford American Diction And Language Guide 931 (1999)) (emphasis added).[3]

Defendant also argues that Judge Burns improperly forbade the grand jury from considering the potential punishment for crimes when deciding whether or not to indict. Defendant relies on the following statement:

> Well, those things – the consequences of your determination shouldn't concern you in the sense that penalties or punishment, things like that – we tell trial jurors, of course, that they cannot consider the punishment or the

---

[2] The Supreme Court has recognized that a grand jury is not required to indict in every case where probable cause exists. In Vasquez v. Hillery, 474 U.S. 254, 263 (1986), the Supreme Court explained: "The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense - all on the basis of the same facts. Moreover, '[t]he grand jury is not bound to indict in every case where a conviction can be obtained.' United States v. Ciambrone, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)."

[3] Defendant concedes that at other times Judge Burns instructed that upon a finding of probable cause, the case "should" go forward. App. 2 to Gov't Response at 8, 17; App. 1 to Gov't Response at 4, 23.

07cr1372 JAH

consequence that Congress has set for these things. *We'd ask you to also abide by that.* We want you to make a business-like decision and look at the facts and make a determination of whether there was a probable cause.

App. 2 to Gov't Response at 25. (Emphasis added.) Although Judge Burns stated that trial jurors *cannot* consider punishment, he did not impose such a restriction on the grand jurors. Instead, Judge Burns *requested* that the grand jurors follow the same principle. Similarly, during the formal charge, Judge Burns stated, "[y]ou *shouldn't* be concerned with punishment that attaches to the charge." App. 1 to Gov't Response at 8. (Emphasis added.)

In United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006), the Ninth Circuit upheld a jury instruction that stated: "[W]hen deciding whether or not to indict, you *should not* be concerned about punishment in the event of conviction; judges alone determine punishment." (Emphasis added.) Consistent with the reasoning in Marcucci and Navarro-Vargas II, the Ninth Circuit held that the instruction did not place an absolute bar on considering punishment and was therefore constitutional. The instructions given by Judge Burns regarding the consideration of punishment were substantially the same as the instruction in Cortez-Rivera.

Judge Burns did not pronounce a general prohibition against jurors exercising their discretion to refuse to return an indictment in the face of probable cause. In any case, "history demonstrates that grand juries do not derive their independence from a judge's instruction. Instead they derive their independence from an unreviewable power to decide whether to indict or not." Navarro-Vargas II, 408 F.3d at 1204.

Judge Burns informed the jurors about the utmost secrecy of the grand jury proceedings and their deliberations. In addition, a video shown to the potential grand jurors titled, "The Federal Grand Jury: The People's Panel," which was intended to educate potential grand jurors about their responsibilities as grand jurors, also informed the jurors of the secrecy of the proceedings. Judge Burns and the video also emphasized to the jury that they were independent of the Government and did not have to return an indictment just because the Assistant U.S. Attorney asked them to. Judge Burns characterized the

7

07cr1372 JAH

jury as "a buffer between our Government's ability to accuse someone of a crime and then putting that person through the burden of standing trial." App. 1 to Gov't Response at 26. Judge Burns also told the jurors that they were not to be a "rubber stamp" and were expected to depend on their independent judgment. Id, at 27.

Even though the jurors were not explicitly instructed that they could use their discretion to refuse to return an indictment, they retained that power by virtue of the secrecy surrounding their deliberations and the unreviewability of their decisions. Nothing that Judge Burns said or did impinged on the jurors' independence in this regard.

Defendant counters that the dismissal of the two potential jurors undermined the grand jury's independence from the very start. According to Defendant, when Judge Burns dismissed the jurors, the message was clear that they were to indict in every case where there was probable cause or they would be excused. Defendant contends that the remaining grand jurors could not have understood Judge Burns' actions in any other way. (Reply Br. 18.) The Court disagrees.

Upon reading the voir dire transcript, it is apparent that the jurors were excused because they were biased against the government with respect to a whole category of criminal laws, not simply because they were independent-minded and might refuse to return an indictment in a case where probable cause exists. Judge Burns explained to the clinical social worker, "We're all products of our experience. We're not going to try to disabuse you of experiences or judgments that you have. What we ask is that you not allow those to control invariably the outcome of the cases coming in front of you; that you look at the cases fresh, you evaluate the circumstances, listen to the witness testimony, and then make an independent judgment." App. 2 to Gov't Response at 15. Judge Burns excused the social worker after he admitted that it would be difficult for him to return an indictment in drug or immigration cases.

Similarly, the real estate agent expressed that he thought drugs should be legal and that people using drugs should not be sent to jail. App. 2 to Gov't Response at 25-26. The real estate agent said that he was not comfortable with indicting in drug cases.

Although he did not say that he would refuse to indict in all cases involving drugs, he admitted that because of his beliefs, there was a chance that he would refuse to return an indictment in a drug case even though there was probable cause. <u>Id.</u> at 27. The real estate agent's responses established that he had serious concerns regarding the criminalization of drugs and could not be impartial with respect to these cases

That bias was the reason for the dismissal of the first two potential  jurors is confirmed by the dismissal of a third potential juror. This juror stated that he had a strong bias for the Government. App. 2 to Gov't Response at 38. Judge Burns cautioned the juror that he should not "automatically defer to [the Government] or surrender the function and give the indictment decision to the U.S. Attorney. You have to make that independently." <u>Id.</u> at 40. Judge Burns emphasized once again the responsibility of the jurors to evaluate the facts of each case independently based on the evidence presented. <u>Id.</u> at 42-43. Demonstrating his even-handedness, Judge Burns explained, "I'm equally concerned with somebody who would say, 'I'm going to automatically drop the trap door on anybody the U.S. Attorney asks.' I wouldn't want you to do that." <u>Id.</u> at 44.

A reasonable grand juror would not have interpreted the dismissal of the first two potential jurors as a message that they must indict in all cases where probable cause is found or risk being excused from service. It was apparent to the other jurors that a lack of impartiality with respect to certain types of cases, *not* independence, was the reason for all three dismissals.

In sum, Judge Burns did not err in instructing the grand jurors that they were not to refuse to return an indictment on the ground that they disagreed with the laws. Furthermore, nothing in the video or Judge Burns' instructions nullified the grand jury's inherent power to refuse to indict for any reason whatsoever. As the Ninth Circuit noted in <u>Navarro-Vargas II</u>, 408 F.3d at 1204, the grand jury's independence results from the secrecy of their deliberations and the unreviewability of their decisions. Nothing in the record shows any impediment to that independence.

**B.**    **<u>Instructions re: Assistant U.S. Attorneys</u>**

07cr1372 JAH

1    Defendant also contends that Judge Burns committed structural error by making
2    comments about the Assistant U.S. Attorney's duty to present evidence that "cuts against
3    the charge." According to Defendant, not only did Judge Burns' comments contradict
4    United States v. Williams, 504 U.S. 36 (1992), but also discouraged independent
5    investigation, leading to inaccurate probable cause determinations. Defendant reasons
6    that given Judge Burns' comments, the grand jurors would have assumed that if the
7    prosecutor did not present any exculpatory evidence, then none exists, rendering further
8    investigation a waste of time.

9    Under Williams, prosecutors do not have a duty to present substantial exculpatory
10   evidence to the grand jury. Although Assistant U.S. Attorneys apparently have an
11   employment duty to disclose "substantial evidence that directly negates the guilt" of a
12   subject of investigation (United States Attorneys' Manual § 9-11.233), it does not appear
13   that they have a broad duty to disclose all evidence that may be deemed exculpatory or
14   adverse to the Government's position.

15   Accordingly, Judge Burns' comments regarding the duty of Assistant U.S. Attorneys
16   to present adverse evidence were inaccurate. However, Judge Burns' comments do not rise
17   to the level of structural error. As discussed above, the video and Judge Burns stressed that
18   the grand jury was independent of the Government. The video and Judge Burns also
19   explained to the jury that they could direct the Assistant U.S. Attorney to subpoena
20   additional documents or witnesses. App. 1 to Gov't Response at 11, 24. The jurors were
21   also told about their right to pursue their own investigation, even if the Assistant U.S.
22   Attorney disagrees with the grand jury's decision to pursue the subject. Id. at 12.

23   In light of the foregoing instructions, the Court does not agree that the grand jurors
24   would assume that if the Government did not present any exculpatory evidence, none
25   exists. A reasonable juror would understand that the Assistant U.S. Attorney may not be
26   aware of certain exculpatory evidence, whether due to legitimate circumstances or
27   inadequate investigation, and that further investigation by the grand jury may be needed
28   to properly evaluate the evidence before them. Furthermore, Judge Burns told the jury

that "in *most* instances" the U.S. Attorneys are duty-bound to present exculpatory evidence. App. 1 to Gov't Response at 20. Based on this qualifying language, the grand jurors would have understood that the prosecutor is not always bound to present exculpatory evidence. Thus, "the structural protections of the grand jury" have not "been so compromised as to render the proceedings fundamentally unfair." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988).

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss the Indictment Due to Erroneous Grand Jury Instruction is **DENIED**.

DATED:  December 5, 2007

HON. JOHN A. HOUSTON
United States District Judge

**IT IS SO ORDERED.**

11

07cr1372 JAH