1 **TIMOTHY R. GARRISON**
California State Bar No. 228105
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, California  92101-5030
Telephone:  (619) 234-8467
4 Timothy_Garrison@fd.org

5 Attorneys for Mr. Angel Rios

6                    UNITED STATES DISTRICT COURT

7                    SOUTHERN DISTRICT OF CALIFORNIA

8                    **(HONORABLE WILLIAM Q. HAYES)**

9 UNITED STATES OF AMERICA,          )     CASE NO.  08cr1811-WQH
                                     )
10                     Plaintiff,    )     DATE: September 2, 2008
                                     )     TIME: 2:00 p.m.
11 v.                                )
                                     )     **NOTICE OF MOTIONS AND MOTIONS**
12                                   )     *IN LIMINE* **TO**:
                                     )
13 ANGEL RIOS,                       )     1) EXCLUDE TECS EVIDENCE PROFFERED
                                     )     BY GOVERNMENT;
14                     Defendant.    )     2) BAR THE GOVERNMENT FROM
                                     )     INTRODUCING EVIDENCE OF OTHER
15                                   )     CRIMES, WRONGS, OR ACTS BESIDES TECS;
                                     )     3) GOVERNMENT SHOULD BE PRECLUDED
16                                   )     FROM INTRODUCING SO-CALLED EXPERT
                                     )     TESTIMONY IN THIS ALIEN SMUGGLE
17                                   )     CASE;
                                     )     4)  PRECLUDE INTRODUCTION OF "MUG
18                                   )     SHOTS" OF MR. RIOS;
                                     )     5) JURY SHOULD NOT BE SUBJECTED TO
19                                   )     DETAILS OF THE COMPARTMENT
                                     )     CONTAINING THE MATERIAL WITNESS,
20                                   )     NOR THE MATERIAL WITNESS' PHYSICAL
                                     )     AND MEDICAL CONDITIONS.
21                                   )     6)EXCLUDE EVIDENCE OF "NERVOUSNESS"
                                     )     BECAUSE IT LACS PROBATIVE VALUE, IS
22                                   )     OVERLY PREJUDICIAL AND LACKS PROPER
                                     )     FOUNDATION;
23                                   )     7) THE CONFRONTATION CLAUSE
                                     )     REQUIRES THAT ANY REFERENCE TO
24                                   )     ALIENAGE MUST BE EXCLUDED IF THE
                                     )     MATERIAL WITNESS DOES NOT TESTIFY
25                                   )     AT TRIAL;
                                     )     8) COURT SHOULD NOT EXCLUDE
26                                   )     STATEMENTS MADE TO THE MATERIAL
                                     )     WITNESS BY OTHERS BECAUSE SUCH
27 _____ )     STATEMENTS ARE NOT ADMISSIBLE
                                           UNDER FRE 801(d)(2)(E)
28                                         9) COURT SHOULD NOT SEND THE
                                           INDICTMENT INTO THE JURY ROOM
                                           DURING DELIBERATIONS;
                                           10) PRECLUDE THE GOVERNMENT FROM

USING ANY EVIDENCE WHICH HAS NOT
BEEN TURNED OVER TO THE DEFENDANT
AT THIS TIME AS VIOLATIVE RULE 16;
11) PRODUCE GRAND JURY TRANSCRIPTS

TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
       PETER MAZZA, ASSISTANT UNITED STATES ATTORNEY

**PLEASE TAKE NOTICE** that on September 2, 2008 @ 2:00p.m., or as soon thereafter as counsel may be heard, the defendant, Angel Rios, by and through his counsel, Timothy R. Garrison, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions listed below.

### **MOTIONS**

Mr. Rios, the defendant in this case, by and through his attorneys, Timothy R. Garrison, and Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, FED. R. CRIM. P. 12, 16 and 26, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

(1) to exclude tecs evidence proffered by government;

2) to bar the government from introducing evidence of other crimes, wrongs, or acts besides tecs;

3) to precluded the government from introducing so-called expert testimony in this alien smuggle case;

4) to preclude introduction of "mug shots" of Mr. Rios;

5) the jury should not be subjected to details of the compartment containing the material witness, nor the material witness' physical and medical conditions.

6) to exclude evidence of "nervousness" because it lacs probative value, is overly prejudicial and lacks proper foundation;

7) to exclude confrontation clause requires that any reference to alienage if the material witness does not testify at trial;

8) to not exclude statements made to the material witness by others because such statements are not admissible under fre 801(d)(2)(e)

9) to not send the indictment into the jury room during deliberations;

10) to preclude the government from using any evidence which has not been turned over to the

1  defendant at this time as violative rule 16;

2       11) to produce grand jury transcripts.

3       These motions are based upon the instant motions and notice of motions, the attached statement of

4  facts and memorandum of points and authorities, and any and all other materials that may come to this Court's

5  attention at the time of the hearing on these motions.

6                            Respectfully submitted,

7

8  Dated: August 19, 2008            */s/ Timothy R. Garrison*
                                    **TIMOTHY R. GARRISON**

9                                   Federal Defenders of San Diego, Inc.
                                    Attorneys for Mr. Rios

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08cr1811-WQH

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy Chambers

Copy Assistant U.S. Attorney via ECF NEF

Copy Defendant

Dated: August 19, 2008            /s/ TIMOTHY R. GARRISON
                                  Federal Defenders of San Diego, Inc.
                                  225 Broadway, Suite 900
                                  San Diego, CA 92101-5030
                                  (619) 234-8467  (tel)
                                  (619) 687-2666  (fax)
                                  Kris_Kraus@fd.org (email)

1   **TIMOTHY R. GARRISON**
    California State Bar No. 228105
2   **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
    225 Broadway, Suite 900
3   San Diego, California  92101-5008
    Telephone:  (619) 234-8467
4

5   Attorneys for Mr. Angel Rios

6

7

8

                        UNITED STATES DISTRICT COURT
9
                     SOUTHERN DISTRICT OF CALIFORNIA
10
                       **(HONORABLE WILLIAM Q. HAYES)**
11

12  UNITED STATES OF AMERICA,        )      CASE NO.  08CR1811-WQH
                                     )
13           Plaintiff,              )      MEMORANDUM OF POINTS AND
                                     )      AUTHORITIES IN SUPPORT OF
14       v.                          )      MR. RIOS'S MOTIONS
                                     )
    ANGEL RIOS,                      )
15                                   )
             Defendant.              )
16                                   )
                                     )
17  _____)

18                                  **I.**

19                       **STATEMENT OF FACTS**

20          Mr. Angel Rios was arrested the morning on May 20, 2008, at the San Ysidro Port of Entry.  Mr.

21  Rios was driving a white Mitsubishi Eclipse.  Officer Michael Sugawa discovered a person hidden in the

22  dashboard, later identified as Rafael Cortes-Cortes.  Mr. Rios made no post-arrest statements.

23          Mr. Rios was charged in a two count indictment with one count of bringing in illegal aliens for

24  financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and one count of bringing in illegal aliens without

25  presentation in violation of  8 U.S.C. § 1324(a)(2)(B)(iii), and 18 U.S.C. § 2.

26          These motions follow.

27  ///

28  ///

1
2

## II.

## THE TECS EVIDENCE PROFFERED BY THE GOVERNMENT SHOULD BE EXCLUDED

3
4

### A.    The Government Has Not Given Sufficient Notice of its Intent to Use TECS Evidence

5
6
7
8
9
10

The government has provided notice that it will try to introduce "TECS" information as evidence of prior border crossings by Mr. Rios.  It has stated that the information relates to prior border crossings, but has given no further information about how prior crossings are relevant to the theory of prosecution.  The government has given no notice of what the TECS evidence would be offered to prove.  The notice lacks adequate specificity.

### B.    The TECS Evidence Proffered by the Government Should Be Excluded under Rule 404(b)

11
12
13
14

The government will try to introduce TECS information as evidence of prior border crossings by Mr. Rios.  This evidence must be excluded because the government has not met and cannot meet its burden of proving that the evidence meets the 404(b) admissibility test.  Most importantly, the TECS evidence does not prove a material issue, and it is more prejudicial than probative.

15
16
17
18
19
20
21
22
23

Evidence of prior border crossings is "other acts" evidence subject to the provisions of Rule 404(b) of the Federal Rules of Evidence.  *See United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999).  Under Rule 404(b), the proffered evidence is admissible only if (1) there is sufficient proof for the jury to find the defendant committed the earlier act; (2) the other act was not too remote in time; (3) if used to prove intent, the prior act must be similar; (4) it must be used to prove a material issue; and (5) the probative value must outweigh prejudice.  *See United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989).  The government bears the burden of proving that the proffered evidence meets this test.  *See United States v. Spillone*, 879 F.2d 514, 518 (9th Cir. 1989).

24
25
26
27
28

Other acts evidence may not be admitted until this Court makes a finding that the evidence is probative of a proper material issue.  *See Huddleston v. United States*, 485 U.S. 681, 686 (1988) ("The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.").  The government has not explained why it wants to introduce TECS evidence, or how it is probative of a material issue.  The government

1    explains that the TECS evidence relates to Mr. Rios' crossing history at the United States - Mexico border.

2    However, the government has not explained how this crossing history is probative of any material issue.

3    Since the government has not met its burden to prove that the evidence will be used to prove a material

4    issue, the TECS information must be excluded.

5         Additionally, this Court must exclude the TECS information because it is more prejudicial that

6    probative.  Prior crossings, particularly in the way that the government plans to introduce them, will only

7    confuse and mislead the jurors.  The TECS information shows crossings that occurred in the middle of the

8    night, in the days and weeks immediately preceding Mr. Rios' arrest.  The TECS information is prejudicial

9    not only in the information it reveals, but in the information it fails to reveal.  The TECS information does

10   not include information about when Mr. Rios crossed *into* Mexico on those occasions.  It does not include

11   information about when Mr. Rios crossed in different vehicles, by foot, or by any other means.  It does not

12   include information about when Mr. Rios crossed months or years before his arrest.  The presentation of

13   this short burst of crossings, in the midst of a trial about what happened on one particular crossing, gives

14   the impression that there is something particularly exceptional about these crossings, in this car, during the

15   month of May.  In short, regardless of how the government presents the TECS evidence, a juror is likely to

16   think that the government is presenting evidence that Mr. Rios was engaged in some sort of smuggling

17   spree.  Thus, even if the government was able to prove that the TECS evidence is proof of a material issue,

18   this Court still must exclude it because it is too prejudicial.

19   **C.    The TECS Evidence Proffered by the Government Should Be Excluded Because it Is Hearsay Not Within a Hearsay Exception**

20        The TECS evidence proffered by the government is hearsay, and should be excluded.  There are no

21   hearsay exceptions that are available to the government to admit this evidence.  The government may not

22   rely on the business records exception under Fed. R. Evid. 803(6).  *See United States v. Orozco*, 590 F.2d

23   789, 793 (9th Cir. 1979) (TECS are not admissible under 803(6)).  The government may argue that the

24   TECS evidence should be admitted under Fed. R. Evid. 803(8).  Under *Orozco*, TECS evidence is not

25   admissible under Rule 803(8) unless the "sources of information or other circumstances" do not indicate a

26   lack of trustworthiness.  590 F.2d at 794.  Since the government has not made such a showing of

27   trustworthiness, the TECS evidence should be excluded.

28

# III.

## THE COURT SHOULD BAR THE GOVERNMENT FROM INTRODUCING EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS BESIDES TECS

**A.    Because the Government Has Failed to Provide Adequate Notice of Other Crimes, Wrongs, or Acts, this Court Should Exclude Any Evidence under Federal Rule of Evidence 404(b).**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce.  Fed. R. Evid. 404(b).  The notice requirement is triggered when timely requested by the defendant.  *United States v. Vega*, 188 F.3d 1150, 1154 (9th Cir. 1999).  Here, Mr. Rios timely requested notice of proposed 404(b) evidence in his motion to compel discovery, filed June 30, 2008.   To date, the Government has provided general notice that it seeks to introduce TECS records and information as proposed 404(b) evidence. As noted above, these records and information are inadmissible under 404(b).   No other 404(b) notice has been given and Mr. Rios asks the Court to preclude introduction of any evidence under Rule 404(b) accordingly.

**B.    Even If Relevant, Evidence of Other Crimes, Wrongs, or Bad Acts Must Still Be Excluded Under Fed. Rule Evid. 403.**

If a court determines that prior bad act evidence is admissible under Fed. R Evid. 404(b), the Court must then determine whether the evidence will be unduly prejudicial.  "[B]ad act evidence that admittedly is probative of one of the issues listed in Rule 404(b) may nevertheless be excluded."  Additionally, "Rule 404(b) does not offer a 'mechanical solution,' but provides, by its very terms, only that such evidence 'may' be admissible."  *Id.* (quoting the Advisory Committee's Note to Rule 404).  Thus, even if a court finds that the prior bad act evidence is admissible, it must consider the prejudicial effect of such evidence:

> The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 404.

*Id.*

Therefore, if the bad act evidence has only a slight tendency to make the existence of any fact that is of consequence more probable, and the introduction of this evidence makes conviction more likely because it provokes an emotional response in the jury or otherwise adversely affects the jury's attitude toward the defendant, apart from the guilt or innocence of the crime charged, the Court should weigh the balance in

favor of excluding the bad act evidence. *Bailleaux*, 685 F.2d at 1110-11. In *Foskey*, the court held that the prior arrest of the defendant for possession of phenmetrazine and dilaudid should have been excluded from the prosecution for possession of the same drug. The court stated:

> [R]ule 403 and 404(b) are not obstacles to be cleared at all costs, even by cutting around corners whenever it is possible to do so. These rules were designed to ensure the defendant a fair and just trial based upon the evidence presented, not upon impermissible inferences of criminal predisposition by confusion of the issues.

*Foskey*, 636 F.2d at 525.

Thus, Mr. Rios submits that admission of any alleged bad act evidence, pursuant to Rule 404(b), would be unduly prejudicial and should be barred accordingly.

**C.    No Government Agent Should Mention Nor Should There Be Cross-examination of Mr. Rios Based upon Any Criminal History Disclosed by the Government to Date.**

Thus far in discovery, the government has disclosed, under Federal Rule of Criminal Procedure 16(a)(1)(D), a rap sheet indicating that Mr. Rios possibly has a prior conviction or arrest for possession of a dangerous weapon. If there is any other prior record, Mr. Rios again reiterates his request under Rule 16(a)(1)(D) ("Upon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody or control if the attorney for the government knows -- or through due diligence could know -- that the record exists."). Neither the misdemeanor conviction nor the prior arrest are permissible impeachment under Federal Rule of Evidence 609 as it only allows impeachment with prior felony <u>convictions</u> not misdemeanor convictions which do not involve veracity nor arrests unless the prior conviction involves issues of veracity or false statement. *See* Fed. R. 609(a)(b) (allowing impeachment with felony convictions within 10 year time limit); *see also* Fed. R. Evid. 609(a)(2) (any prior conviction admissible if the elements of the offense required proof or admission of an act of dishonesty or false statement). Possession of a dangerous weapon is not a crime of veracity or involving false statement. *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) ("[T]heft crimes. . . do not involve 'dishonesty or false statement' within the meaning of rule 609(a)(2)");*United States v. Estes*, 994 F.2d 147, 149 (5th Cir. 1993).

///

///

1

**IV.**

2

**THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING SO-CALLED EXPERT TESTIMONY IN THIS ALIEN SMUGGLING CASE**

3

4      The government has given expert notice that its case agent will testify about TECS.  The notice is

5 inadequate. The government has not disclosed the materials the expert might rely on to form her opinions

6 and the Ninth Circuit noted in its recent *en banc* opinion that there, the government <u>conceded</u> that it must

7 disclose specific materials relied upon by its experts to defense counsel.  *United States v. Fort*, 472 F.3d

8 1106, 1121 (9th Cir. 2007).  The *Fort* court stated: that "materials on which a proposed expert witness

9 relies [in developing his opinions] must be produced to Defendants in discovery."  *Id.* at 1121.  This is so

10 even if the materials would otherwise be protected under the federal rules.  *Id.*  There, the *en banc* Ninth

11 Circuit remanded the case for a hearing in the district court to determine whether or not the expert actually

12 relied upon certain reports because if he had, they had to be disclosed.

13      Here, Agent Rangel, according to a memorandum to the United States Attorney, will have relied

14 upon classes she has taken on the TECS system.  Any written materials from those classes should be

15 produced.

16      This requirement "is intended to minimize surprise that often results from unexpected expert

17 testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the

18 merits of the expert's testimony through focused cross examination."  Fed. R. Crim. P. 16, Advisory

19 Comm. Notes, 1993 Amendment, ¶ 1.  The rule has the additional benefit of providing counsel with the

20 substantive information necessary to conduct a thorough and useful *Daubert/Kumho* / Rule 702 inquiry,

21 which, in turn, assists the Court in performing its gate-keeping function.

22      Before the Court can admit expert testimony under Rule 702, it must ensure itself that 1) the

23 "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence

24 or to determine a fact in issue"; 2) the expert is qualified by "knowledge, skill, experience, training, or

25 education"; 3) "the testimony is based upon sufficient facts or data"; 4) "the testimony is the product of

26 reliable principles and methods"; and 5) "the witness has applied the principles and methods reliably to the

27 facts of the case."  Fed. R. Evid. 702; *see also Kumho*, 526 U.S. at 147 ("Federal Rule of Evidence 702

28 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only

1 relevant, but reliable'" (quoting *Daubert,* 509 U.S. at 589)).  In *Kumho,* the Supreme Court made clear that

2 this inquiry applies, not only to "scientific" testimony, but also to testimony based on specialized

3 knowledge, such as the testimony the government proposes here.  *Id.* at 150-52.

4      Furthermore, a court evaluating whether proposed "specialized knowledge" testimony has a reliable

5 basis under *Daubert* and *Kumho* must look beyond "bare qualifications" and an expert's conclusions to the

6 facts, reasoning, and methodology behind the conclusions.  *United States v. Hermanek,* 289 F.3d 1076,

7 1094 (9th Cir. 2002).  In *Hermanek,* for example, the Ninth Circuit held that the district court erroneously

8 admitted the testimony of a government expert called to interpret coded drug conversations where "[t]he

9 district court relied solely on [the expert's] general qualifications without requiring the government to

10 explain the method [the expert] used to arrive at his interpretations of words he had never encountered

11 before."  *Id.* at 1094.  The Ninth Circuit found inadequate the expert's generic reliance on his experience,

12 stating:  "The factors [the expert] identified—his knowledge and prior investigation of defendants and the

13 'evidence seized' in the case—were too vague and generalized to satisfy the requirements of Rule 702."  *Id.*

14  By the same token, the government's proffered expert here must "'explain the reasoning and methods

15 underlying [his] conclusions,'" *id.* (quoting *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir.

16 1994), and "explain in ... detail the knowledge, investigatory facts and evidence he [is] drawing from," *id.*,

17 before the Court can admit his testimony.

18      Finally, the rule safeguards a defendant's Fifth and Sixth Amendment rights to a fair trial and

19 meaningful cross-examination, U.S. Const. Amends. V, VI—rights that would otherwise be compromised.

20 *See United States v. Zanfordino*, 833 F. Supp. 429, 432-33 (S.D.N.Y. 1993) (granting the defense's request

21 for discovery regarding the basis of the expert's testimony and holding that a cross examination conducted

22 without that information implicates due process and the Confrontation Clause:  "If an expert is testifying

23 based in part on undisclosed sources of information, cross-examination vouchsafed by [the Confrontation]

24 Clause would be unduly restricted."  *Zanfordino,* 833 F. Supp. at 432.  Mr. Rios's right to confront and

25 cross examine the witness, guaranteed by the Sixth Amendment and effectuated by the discovery rules, will

26 not merely be "unduly restricted" absent disclosure of the bases of the opinions, it will be eviscerated.

27      Here, the basis of the expert's testimony has not been revealed.  The expert would apparently rely

28 upon materials not yet produced to the defense, including reports and various reference materials.  Thus, the

1  bases of proposed experts's opinions—the "materials on which [the] proposed expert witness relie[d] [in

2  developing his opinions]," *Fort* 472 F.3d at 1121—are completely unknown to the defense.  All of this

3  information -- along with the identity of its source -- must be produced and Mr. Rios requests a *Daubert*

4  hearing outside the presence of the jury prior to the introduction of any such testimony.

5  **V.**

6

7  **INTRODUCTION OF "MUG SHOTS" OF MR. RIOS ARE HIGHLY PREJUDICIAL WITHOUT
   ADDING ANY PROBATIVE VALUE TO THIS TRIAL, THUS MERITING EXCLUSION UNDER
   FRE 403.**

8

9      Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Rios

10  taken while she was in custody.  These pictures have no place at this trial.  This is not an identity case: Mr.

11  Rios does not dispute that he is the individual arrested at the POE.  Accordingly, these pictures have no

12  probative value.  In contrast, however, their appearance automatically puts one in mind of a criminal, and is

13  not unlike forcing a defendant to wear jail-issued clothing while in trial.  Under Federal Rule of Evidence

14  403, these pictures are highly prejudicial and devoid of probative value.  They should be excluded from trial

15  as a result.

16  **VI.**

17  **THE JURY SHOULD NOT BE SUBJECTED TO DETAILS OF THE COMPARTMENT
    CONTAINING THE MATERIAL WITNESS, NOR THE MATERIAL WITNESS' PHYSICAL
    AND MEDICAL CONDITIONS.**

18

19

20      Under Fed. R. Evid. 401, 402, and 403, Mr. Rios moves to exclude details about the compartment

21  that contained the material witness in this case as well as details about the material witness' physical and

22  medical conditions at the time of his discovery by the agents .  While these may be appropriate sentencing

23  issue in some cases, they in no way addresses an element of this crime or rebut any possible defense at trial.

24  Both are literally irrelevant to any disputed issue in this case.  In *United States v.  Gonzalez-Flores*, 418

25  F.3d 1093 (9th Cir.  2005), the government was allowed to introduce evidence that material witnesses were

26  suffering from heatstroke and needed immediate serious medical attention.  *Id.*  at 1097.  In finding error,

27  the Ninth Circuit held that since the evidence did not go to an element of the charge under 8 U.S.C. § 1324,

28  the probative value of the evidence was quite low.  Any probative value that did exist was outweighed by

1    prejudice because the evidence had an undue tendency to suggest a decision upon an improper basis; thus it

2    should have been excluded under Fed. R. Evid. 403. *Id.* at 1099.

3        Just as in *Gonzalez-Flores*, admission of evidence regarding the details of the compartment or any

4    possible physical or medical conditions of the material witness have nothing to do with an element of the

5    crimes charged. If admitted, the evidence will prove highly inflammatory and prejudicial, and could lead a

6    jury to seek to punish Mr. Rios regardless of fault. Under Fed. R. Evid. 401, 402, and 403, this evidence

7    should be excluded at trial.

8                                    **VII.**

9    **THE COURT SHOULD EXCLUDE EVIDENCE OF "NERVOUSNESS" BECAUSE IT LACKS**
     **PROBATIVE VALUE, IS OVERLY PREJUDICIAL AND LACKS PROPER FOUNDATION**

10

11   **A.    Such Testimony Should Be Precluded Under Federal Rule of Evidence 403:Testimony That**
         **Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

12

13       Federal Rule of Evidence 403 allows the Court to exclude relevant evidence if the "[p]robative

14   value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding

15   nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. *United States*

16   *v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000) (*en banc*) (evidence of nervousness "is of limited

17   significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant].");*United*

18   *States v. Fernandez*, 18 F.3d 874, 879 (10th Cir.1994) ("We have repeatedly held that nervousness is of

19   limited significance in determining reasonable suspicion and that the government's repetitive reliance on

20   the nervousness  . . . must be treated with caution"); *see also Gall v. Parker*, 231 F.3d 265, 292 (6th Cir.

21   2000) (testimony that Gall seemed "nice [and] normal" and "not nervous"error because -- "we have long

22   been skeptical of such lay testimony"); *United States v. Burks*, 547 F.2d 968, 970 (6th Cir.1976) (stating

23   that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity

24   to observe" him had little value), *rev'd on other grounds*, 437 U.S. 1, 98 S.Ct. 2141 (1978); *United States v.*

25   *Smith*, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a

26   witness's "direct knowledge of the defendant is brief and superficial.").[1]

27   ────────────────

28       1 In both *Gall* and *Smith*, mental state was the defense, and it was deemed error to have lay
     witnesses, without prior knowledge of the defendant opine that he appeared "not nervous," *Gall*, 231 F.3d

1    In reversing a trial court's decision, the Tenth Circuit, in *Fernandez* expressly notes, that: "[t]he

2  lower court's heavy reliance on nervousness as an important factor establishing reasonable suspicion is

3  even more troublesome given the complete lack of evidence in the record that [the police officer] had any

4  prior knowledge of Fernandez . . . ." 18 F.3d at 879.

5    These cases demonstrate that the judiciary, in general, and this Circuit, specifically, places little to

6  no weight upon nervousness in making particular fact-based rulings under the lesser burdens of proof than

7  the beyond a reasonable doubt standard applicable at trial.  *See, e.g., United States v. Chavez-Valenzuela*,

8  268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic stop -- even  . . . extreme nervousness . . .  in

9  the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal

10  activity . . . .").  For example, in *Chavez-Valenzuela, Wald* and *Fernandez* nervousness was considered to

11  be of little to no probative value in a probable cause/reasonable suspicion context where evidentiary

12  standards are relaxed and <u>where there is no need to consider the prejudicial impact of such evidence</u>. *Id.;*

13  *Wald*, 216 F.3d at 1227; *Fernandez,* 18 F.3d at 879.

14    The reasoning underlying the minimal significance accorded to "nervousness," is that courts

15  recognize that "nervousness" has both an innocent and a guilty explanation because people confronted with

16  law enforcement often exhibit signs of nervousness, without having done anything wrong.  *See, e.g.,*

17  *Chavez-Valenzuela*, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and

18  criminals alike"); *United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that

19  "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural

20  unease when confronted by an authority figure and another being fear of getting caught with contraband the

21  person knows he is carrying"); *accord Wald*, 208 F.3d at 907 (it is not uncommon for most citizens, even

22  innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); *United*

23  *States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997) ("It is certainly not uncommon for most

24  citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law enforcement

25  officer."); *Fernandez*, 18 F.3d at 879 (same); *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir.

26  

27  at 292, or that "he did not appear abnormal," *Smith*, 437 F.2d at 540.  Similarly, here, where a distinct

28  mental state knowledge, is the determinative issue, permitting witnesses without expertise and with no prior
knowledge of Mr. Rios to testify to the converse, that she was nervous, is equally erroneous.

1    1990) ("Nervousness, however, is 'a normal reaction to circumstances which one does not understand. In

2    the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying

3    consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty

4    knowledge");[2] *United States v. Millan-Diaz*, 975 F.2d 720, 722 (10th Cir.1992) (same); *United States v.*

5    *Grant*,  920 F.2d 376, 386 (6th Cir. 1990)("[n]ervousness is entirely consistent with innocent behavior,

6    especially at an airport where a traveler may be anticipating a long-awaited rendezvous with friends or

7    family"); *United States v. Andrews*, 600 F.2d 563, 566, n. 4 (6th Cir.1979) (noting inconsistent rationales

8    taken by government in explaining nervousness).

9           In determining what can properly be considered in making reasonable suspicion/probable cause

10   determinations, it is improper for district courts to rely upon factors which lead to a "heads I win, tails you

11   lose" result for the prosecution.  *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1447 (9th Cir. 1994) (noting that

12   point with respect to a driver's avoidance of eye contact with law enforcement the government argues that

13   whether the driver made eye contact or avoided it both are signs of guilt); *see also United States v. Lopez*,

14   564 F.2d 710 (5th Cir. 1977)(where a factor and its opposite can both be used to justify a stop, the court

15   should not give weight to either factor.).  Nervousness is precisely such a factor as recognized by the court

16   in *Andrews*, 600 F.2d  at 566, n. 4, where it discussed the fact that the government argues in some cases that

17   "nervousness" indicates guilty knowledge while in others that its absence indicates the guilty knowledge of

18   the calm and collected criminal.  Since it is inappropriate for courts to consider such a factor in a mere

19   probable cause calculus, concomitantly, a jury should not consider it at a far more important event, such as

20

21

22

23

24

25

26          2  In *Diaz-Carreon*, the Fifth Circuit held that the "nervousness" was linked to consciousness of

27   guilt but only because there, "before being told that agents had discovered marijuana in the pickup truck,

28   Diaz-Carreon volunteered, 'If the truck is loaded, I didn't know about it.'"  915 F.2d at 954 (emphasis in
     original).  Here, no such link between any amorphous "nervous" behavior and consciousness of guilt exists.

a trial[3]. Indeed, we expect our judges to be able to put aside undue prejudice when the law recognizes that jurors cannot do the same.

It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that an individual was "nervous" and equate nervous behavior with suspicious behavior. *See, e.g., United States v. Gutierrez*, 995 F.2d 169, 172 (9th Cir.1993) (testimony of law enforcement officers " 'often carries an aura of special reliability and trustworthiness,' ") (quoting *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir.1987)). It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence of law enforcement, is ambiguous. For these reasons, evidence that someone was "nervous" should fall in the same category as evidence that an individual remained silent when confronted with law enforcement accusation. That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to Federal Rule of Evidence 403. *United States v. Hale*, 422 U.S. 171 (1975). In *Hale*, 422 U.S. 171, the Supreme Court held that evidence permitting an inference of silence lacks probative value and is potentially too prejudicial to be admitted at trial from an evidentiary, not a constitutional, standpoint. *Id.* The prosecution cross-examined Hale about the fact that, at arrest, he had not told the police the exculpatory version of events to which he testified at trial. *Id.* at 174. The Supreme Court characterized this as silence evidence and stated that: "[i]n most circumstances, silence is so ambiguous that it is of little probative force." *Id.* at 176. "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted." *Id.* at 180.

---

3 In the suppression context, courts are precluded from considering certain factors and as a matter of law, cannot rely upon them in finding probable cause or reasonable suspicion, such as race or ethnicity, *United States v. Montero-Camargo,* 208 F.3d 1122, 1131-32 (9th Cir.2000) (en banc). Because of its limited probative value and the equivalent "guilty" and "innocent," explanation, courts indicate that "nervousness"also, should be accorded little to no consideration. While a factor such as race is not permitted to be the subject of testimony indicating guilty knowledge at a trial for other reasons, one such reason, i.e, that it has no relevance for purposes of ascertaining guilty knowledge, applies equally to nervousness. Just as race would not be a permissible subject of testimony at trial, neither should testimony about nervousness be admitted.

1    Similarly, here, just as with silence evidence, the import of the testimony is ambiguous while the

2 danger of unfair prejudice is substantial.  The Supreme Court recently recognized in *Mitchell v. United*

3 *States*, 526 U.S. 314, 327 (1999), with respect to silence evidence, even those "who should be better

4 advised" are inclined to assume guilt when they learn that someone has remained silent.  Here, just as there,

5 jurors (who probably are not among the "better advised"), upon hearing from a law enforcement agents that

6 Mr. Rios was "nervous," will be "inclined to assume guilt" as opposed to assuming the equally applicable

7 innocent explanation.  Thus, any slight probative value which could exist is insufficient to justify its

8 admission.  All told, any proposed testimony that Mr. Rios displayed signs of nervousness is irrelevant to

9 the issue at hand and should be excluded under Federal Rule of Evidence 403 as being substantially more

10 prejudicial than probative.

11   **B.    Admission of Nervousness Testimony Violates Federal Rule of Evidence 701**

12    Finally, such evidence should be excluded if it is couched, as it is this case, in terms of a law

13 enforcement witness' personal opinion about Mr. Rios's behavior, i.e., "he was nervous."  The agent's

14 personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and

15 upon a very limited observation opportunity, violates Fed. R. Evid. 701.  Rule 701 provides that a lay

16 witness can only testify to opinions or inferences which are (a) rationally based on the perception of the

17 witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in

18 issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule

19 702.  In *Gonzalez-Rivera v. INS*, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's

20 testimony at a suppression hearing that an individual was nervous must be disregarded because it was not

21 based upon "reliable, objective evidence."  *Id.* at 1447.  There, when explored, the basis for the agent's

22 testimony was that the individual appeared to have a "dry mouth."  The court stated that absent reliable,

23 objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this

24 inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for

25 separating out the illegal aliens from the American citizens and legal aliens."  *Id.*  Likewise the testimony in

26 the instant case that Mr. Rios, is "nervous" is nothing more than a subjective judgment based upon no prior

27 knowledge of his and, similarly, should not be considered by the jury.

28 ///

1

## VIII.

2

### THE CONFRONTATION CLAUSE REQUIRES THAT ANY REFERENCE TO ALIENAGE MUST BE EXCLUDED IF THE MATERIAL WITNESS DOES NOT TESTIFY AT TRIAL

3

4          Pursuant to the Confrontation Clause made above, the court must exclude any reference to the

5    alienage of the material witness if he does not testify at trial.  "Where testimonial evidence is derived from

6    custodial interrogation, 'the Sixth Amendment demands what the common law required: unavailability and

7    a prior opportunity for cross-examination.'" *Crawford*, 124 S. Ct. at 1374.  Since "a custodial statement

8    regarding nationality is material and goes to the heart of the Government's case against Defendant because

9    it proves an element of the offense," it is a "core testimonial statement[]" that "may well determine whether

10   Defendant is incarcerated or released from custody." Id. at 5.  As such, "to dispense with the Confrontation

11   Clause under [these] circumstances would promote, rather than restrict, the 'principal evil at which the

12   Confrontation Clause was directed . . . [the] use of ex parte examinations as evidence against the accused."

13   Id. (quoting Crawford, 124 S. Ct. at 1363).

14          While the government may attempt to argue that statements relating to alienage are admissible

15   under an exception to the hearsay rules in that they are statements of personal and family history under FRE

16   804(b)(4), this argument is also "unavailing."  *See Id.* at 5.  In Crawford, the Court discredited the

17   "reliability" determination proffered in Roberts and *United States v. Winn*, 767 F.2d 527 (9th Cir. 1985).

18   See Id. at 5, n.2.  The "categorical approach" established by Crawford precludes any reliance on hearsay

19   rules to admit core "testimonial statements" absent the ability to cross-examine.  Id.  As such, absent their

20   testimony at trial, any statements made by the material witness, relating to her alienage, must be excluded..

## IX.

21

### THIS COURT SHOULD EXCLUDE STATEMENTS MADE TO THE MATERIAL WITNESS BY OTHERS BECAUSE SUCH STATEMENTS ARE NOT ADMISSIBLE UNDER FRE 801(d)(2)(E)

22

23          The government may attempt to admit statements made to the material witness by others regarding

24   arrangements for entry and payment into the United States as purported "co-conspirator statements" under

25   Fed. R. Evid. 801(d)(2)(E).  Mr. Rios objects to the admission of these hearsay statements on hearsay and

26   Confrontation Clause grounds.

27          Fed. R. Evid. 801(d) provides:  "A statement is not hearsay if . . . the statement is offered against a

28   party and is . . .  a statement by a co-conspirator of a party during the course and in furtherance of the

1    conspiracy."   To admit hearsay statements, the government bears the burden of demonstrating an exception

2    to the hearsay rule. *See, e.g., United States v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997) (proponent bears

3    burden of demonstrating exception for statements against interest).   Thus, first, the government must prove

4    the existence of the conspiracy by a preponderance of the evidence. *Bourjaily v. United States*, 107 S. Ct.

5    2775 (1987); *United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988); *see also United States v. Munoz*,

6    233 F.3d 1117, 1135 n.3 (9th Cir. 2000) (rejecting government's co-conspirator argument on appeal where

7    trial court made no preliminary findings that exception applied).   Furthermore, under Fed. R. Evid.

8    801(d)(2)(E), a statement of a co-conspirator is admissible against the defendant only if the government

9    shows by a preponderance of the evidence that:  (1) a conspiracy existed at the time the statement was

10    made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was

11    made in furtherance of the conspiracy. *United States v. Bowman*, 215 F.3d 951, 960-61  (9th Cir. 2000).

12        Second, in *United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991), this Court held that a court may

13    not base a finding of the existence of a conspiracy solely on the hearsay statement offered. *Id*. at 774-75.  If

14    the sole evidence upon which the court could have found the existence of conspiracy is the statement itself,

15    that is insufficient. It is well established that the statements of the declaring are not admissible without

16    independent corroborating evidence, apart from the statement itself, that the declaring and the defendant

17    were in a conspiracy together. *See, e.g., United States v. Castaneda*, 16 F.3d 1504, 1508 (9th Cir. 1994);

18    *United States v. Miller*, 981 F.2d 439, 442 (9th Cir. 1992) (same).   Defendant's membership must be

19    corroborated by evidence independent of the statement. *United States v. Tellier*, 83 F.3d 578 (2d Cir.

20    1996).  To be admissible, the alleged co-conspirator statement must be made by a conspirator in furtherance

21    of the conspiracy. *United States v. Bibbero,* 749 F.2d 581 (9th Cir. 1984).

22        Here, the government has made no showing that a conspiracy existed, or that the material witness or

23    the people to whom he talked place Mr. Rios in a conspiracy.  The question comes down to "whether there

24    was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture."

25    *United States v. Manning,* 56 F3d 1188, 1997 (9th Cir. 1995) (quoting *United States v. Layton*, 855 F.2d

26    1388, 1398 (9th Cir. 1988)).  The government must satisfy all the above precepts before attempting to admit

27    any statements made by non-testifying individuals to the material witness.

28

**X.**

## THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS.

In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Rios urges this Court to follow the Committee's guidance. The language in the instant Indictment intentionally mirrors the language of the charged statutes. Accordingly, jurors could be improperly persuaded by the similarities between the Indictment allegations and the elements of the crime. Because the Indictment is not evidence, but could potentially be mistaken for such, this document should not be permitted into the jury room during deliberations.[4]

**XI.**

## THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM USING ANY EVIDENCE WHICH HAS NOT BEEN TURNED OVER TO THE DEFENDANT AT THIS TIME AS VIOLATIVE OF RULE 16

Mr. Rios has requested discovery from the government from the day he was arraigned, July 12, 2008.[5] However, several items of discovery, although requested, have not been made available to Mr. Rios: one, the names of all border patrol agents involved in this case; two, dispatch tapes related to the arrest of Mr. Rios or Ivan Cervantes-Cervantes; three, all reports of investigation from any prior apprehensions of

---

4 Should the Court allow a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence. See United States v. Utz , 886 F.2d 1148, 1151-52 (9th Cir. 1989).

5    If this Court determines that the events surrounding the shooting at the border are not irrelevant and/or prejudicial, then Mr. Rios hereby requests the following additional materials: (1) all training materials provided to members of the Bureau of Homeland Security regarding the use of force (written, audio, video, etc); (2) personnel records of officers involved in the shooting; and (3) all other pertinent information relating to the use of force.

1   Mr. Rios; four, an opportunity to inspect Mr. Rios's personal property; five, an opportunity to inspect any

2   other cellphone evidence related to this case.

3          Rule 16 requires disclosure to the defendant of evidence within the possession, custody, or control

4   of the government upon the defendant's request.  F.R.C.P. 16(a)(1)(A).  Mr. Rios made a timely request for

5   discovery.  Disclosure of any further discovery at this late date would not allow enough time for Mr. Rios to

6   adequately use the information in his defense.  Thus, Mr. Rios asks that any evidence he is entitled to

7   receive, but has not yet received, be precluded as a violation of Rule 16.

8                                              **XII.**

9                           **MOTION FOR GRAND JURY TRANSCRIPTS**

10         The Court should make Grand Jury transcripts available if the defense can show a particularized

11  need.  The particularized need present in this case is that defense counsel anticipates that at least one

12  witness who testified before the Grand Jury will testify during Mr. Rios's trial.  The government must

13  produce a transcript of a witness' testimony before the Grand Jury after direct examination of the witness at

14  the motions hearing or at trial.  *Dennis v. United States*, 384 U.S. 855 (1966); Fed. R. Crim. P. 26.2(f)(3).

15  The defense requests that the government make such transcripts available in advance of the trial to facilitate

16  the orderly presentation of evidence and remove any need for a recess in the proceedings for defense

17  counsel to examine the statement pursuant to Fed. R. Crim. P. 26.2(d).

18                                             **XIII.**

19                                      **CONCLUSION**

20         For the foregoing reasons, Mr. Rios respectfully requests that this Court grant her motions in limine.

21                                  Respectfully submitted,

22

23
    DATED:  August 19, 2008              */s/ Timothy R. Garrison*
24                                        TIMOTHY R. GARRISON
                                          BRIDGET L. KENNEDY
25                                        Federal Defenders of San Diego, Inc.
                                          Attorneys for Mr. Angel Rios
26

27

28

                                            17                            08CR1811-WQH