```
 1  KAREN P. HEWITT
    United States Attorney
 2  PETER J. MAZZA
    Assistant United States Attorney
 3  California Bar No. 239918
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: (619) 557-7034

 6  Attorneys for Plaintiff
    United States of America
 7
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08CR1811-WQH |
|---|---|---|
| Plaintiff, | ) ) | DATE: September 2, 2008<br>TIME: 2:00 p.m. |
| v. | ) ) | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S |
| ANGEL RIOS, | ) ) | MOTIONS *IN LIMINE* TO: |
| | ) ) | (1) EXCLUDE TECS EVIDENCE PROFFERED BY GOVERNMENT; |
| | ) ) | (2) BAR GOVERNMENT FROM INTRODUCING OTHER 404(b) EVIDENCE; |
| | ) ) | (3) PRECLUDE EXPERT TESTIMONY;<br>(4) PRECLUDE MUG SHOT; |
| | ) ) | (5) PRECLUDE EVIDENCE OF COMPARTMENT AND MATERIAL WITNESS'S CONDITION; |
| | ) ) | (6) EXCLUDE "NERVOUSNESS" EVIDENCE; |
| | ) ) | (7) PRECLUDE REFERENCE TO "ALIENAGE" UNLESS MATERIAL WITNESS TESTIFIES |
| | ) ) | (8) EXCLUDE STATEMENTS MADE BY OTHERS TO MATERIAL WITNESS |
| | ) ) | (9) EXCLUDE INDICTMENT FROM JURY ROOM |
| | ) ) | (10) PRECLUDE EVIDENCE THAT HAS NOT BEEN TURNED OVER |
| | ) ) | (11) PRODUCE GRAND JURY TRANSCRIPTS |
| Defendant. | ) ) | |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Peter J. Mazza, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions In Limine.  This Response is based upon the files and records of this case.

**I**

**STATEMENT OF FACTS**

**1.    Primary Inspection**

On May 20, 2008, at approximately 1:52 a.m., Defendant entered the San Ysidro, California Port of Entry as the driver, registered owner, and sole visible occupant of a 1996 Mitsubishi Eclipse, bearing California license plate number 5PNB841. Defendant presented his I-551 card to Customs and Border Protection Officer (CBPO) Sheryl Reese at primary inspection. Officer Reese noticed that Defendant took unusual care in opening the glove box when Officer Reese asked Defendant to retrieve the vehicle's registration documents.  Officer Reese also observed Defendant's hand shaking when he handed his I-551 card to her. Officer Reese questioned Defendant about his origin of travel in Mexico.  Defendant stated he had visited his aunt and was going to San Diego, California.  Defendant then made two negative customs declarations in response to inquiries from CBPO Reese.  Officer Reese referred Defendant and his vehicle to secondary inspection for further examination.

//

2. **Secondary Inspection**

At secondary inspection, CBP Canine Enforcement Officer (CEO) Michael Sagawa inspected the vehicle with his human/narcotics detection dog. The dog immediately alerted to the vehicle. Upon entering the passenger compartment, the dog indicated the presence of a person/contraband in the dashboard area of the car. CEO Sagawa removed the dog from the vehicle and inspected the dash. He observed human skin and hair and dark clothing through a gap between the dashboard and the glove box. A lone male individual, later identified as Rafael Cortes-Cortes, was removed from a specially modified compartment inside the dashboard. Officers could see Cortes-Cortes's feet through an opening under the dashboard of the vehicle. Officers observed that Cortes-Cortes was positioned horizontally behind the dashboard with his feet toward the driver's side. Officers removed Cortes-Cortes after pulling the dashboard panel upward.

Officers determined Cortes-Cortes was a citizen and native of Mexico without any legal right to enter or remain in the United States. Officers took Defendant into custody.

3. **Defendant's Statement**

At approximately 3:18 a.m., Defendant was advised of his *Miranda* rights in the English language. Defendant invoked his right to counsel.

4. **Material Witness's Statement**

The material witness, Rafael Cortes-Cortes, stated that he is a Mexican citizen by birth and that he does not possess any

documents that would permit his legal entry into the United States. Cortes-Cortes admitted to having tried to enter the United States previously. He further admitted that he was removed from the United States on May 19, 2008.

Cortes-Cortes stated he personally made arrangements with an unknown smuggler in Mexico to be smuggled into the United States for $2,500. Cortes-Cortes stated the smuggler drove him to a house where he was eventually loaded into Defendant's vehicle. According to Cortes-Cortes, the vehicle made a brief stop on the way to the port of entry. Cortes-Cortes believed that someone got out of the vehicle during the brief stop. He informed agents that he heard two men speaking in Spanish during the stop. Cortes-Cortes stated that one man told the other to "get out." Cortes-Cortes estimated that he was in the compartment for approximately ten minutes before being removed by the officers at the port of entry.

**II**

**POINTS AND AUTHORITIES**

1. **Exclude TECS Evidence**

    A. **Notice By The United States**

On August 12, 2008, out of an abundance of caution, the Government provided notice of its intention to introduce crossing history related to Defendant and the vehicle that he was driving at the time of his arrest, even though the Government does not concede that such evidence is 404(b) evidence. Additionally, again out of an abundance of caution, the Government provided

1  notice that CBP Officer Elizabeth Rangel-Machuca may be called to
2  testify regarding TECS data at trial.  A copy of Officer Rangel's
3  curriculum vitae was provided to Defendant on August 13, 2008.  As
4  stated below, this evidence is admissible whether regarded as
5  "inextricably intertwined" with the instant offense or 404(b)
6  evidence.

**B.   Evidence Regarding TECS Records Are Admissible**

The Government may offer evidence of prior crossings by Defendant and/or the vehicle in which he was arrested on the day of the offense.  Any such evidence is admissible because it is "inextricably intertwined" with the acts constituting the instant offense, or alternatively, under Rule 404(b).

The most common type of evidence that is not subject to Rule 404(b) involves evidence that is not of an extrinsic act, but rather is of an intrinsic act intertwined with the charged offense or offenses.  The Ninth Circuit has consistently held that evidence relating to uncharged, inextricably intertwined acts do not fall within the purview of Rule 404(b).  See e.g., United States v. Beckman, 298 F.3d 788, 793 (9th Cir. 2002) (admitting evidence of prior drug runs by a defendant, as testified to by his co-conspirator, so that the prosecutor may offer a "coherent and comprehensible story regarding the commission of the crime"); United States v. King, 200 F.3d 1207, 1214 (9th Cir. 1999) (finding that testimony of a former business associate of defendant admissible to explain the nature of defendant's business scheme in a bank fraud case); see also United States v. Soliman,

1   813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated
2   as other crimes evidence when the evidence concerning the other
3   act and the evidence concerning the crime charged are inextricably
4   intertwined.") (internal quotations and citations omitted).
5       In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir.
6   1995), the Ninth Circuit explained that inextricably intertwined
7   evidence that does not fall under Rule 404(b)'s umbrella typically
8   come in two forms.  First, some "other act" evidence is admissible
9   because it constitutes a part of the transaction that serves as
10  the basis for the criminal charge.  See id. at 1012; see also
11  United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993)
12  ("[T]he policies underlying rule 404(b) are inapplicable when
13  offenses committed as part of a single criminal episode become
14  other acts simply because the defendant is indicted for less than
15  all of his actions.").  Second, "other act" evidence may be
16  admitted when it is necessary to offer a coherent and
17  comprehensible story regarding the commission of the crime.  See
18  Vizcarra-Martinez, 66 F.3d at 1012-13; see also United States v.
19  Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (admitting evidence
20  regarding a shoot-out between the defendant and police as
21  inextricably intertwined to evidence of the crime alleged: felon
22  in possession of a firearm).  Although not subject to Rule 404(b),
23  both types of inextricably intertwined evidence described in
24  Vizcarra-Martinez may require pre-trial notice under Rule 16.
25  See, e.g., Fed. R. Crim. P. 16(a)(1)(E) (requiring disclosure of

**1**  papers, documents, in the Government's possession if the
**2**  Government intends on using the items in its case-in-chief).
**3**  Rule 404(b) of the *Federal Rules of Evidence* precludes the
**4**  admission of evidence of "other acts . . . to prove the character
**5**  of a person in order to show action in conformity therewith" but
**6**  allows such evidence to establish "motive, opportunity, intent,
**7**  preparation, plan, knowledge, identity, or absence of mistake or
**8**  accident." Fed. R. Evid. 404(b). The Ninth Circuit has adopted
**9**  a four-part test to determine the admissibility of evidence under
**10** Rule 404(b). The court should consider the following: (1) the
**11** evidence of other crimes must tend to prove a material issue in
**12** the case; (2) the other crime must be similar to the offense
**13** charged; (3) proof of the other crime must be based on sufficient
**14** evidence; and (4) commission of the other crime must not be too
**15** remote in time. See United States v. Montgomery, 150 F.3d 983,
**16** 1000-01 (9th Cir. 1998). In addition to satisfying the four-part
**17** test, evidence of other crimes must also satisfy the Rule 403
**18** balancing test, *i.e.*, its probative value must not be
**19** substantially outweighed by the danger of unfair prejudice. See
**20** Fed. R. Evid. 403.
**21** Finally, TECS data is admissible as a public record. The
**22** Ninth Circuit has held that the type of crossing information
**23** recorded in TECS may be admitted as a public record. See United
**24** States v. Orozco, 590 F.2d 789, 793 (9th Cir. 1979) (holding TECS
**25** admissible as a public record under FRE 803(8)). Therefore, if a
**26** sufficient foundation is laid, the TECS information would be
**27**
**28**

1  admissible.  Contrary to Defendant's designation of this evidence
2  as "expert testimony," as a public record all that is necessary
3  for admissibility of the evidence is a witness who can establish
4  that these records set forth the activities of the office or
5  agency or reflect matters observed pursuant to duty imposed by
6  law.  See Fed. R. Evid. 803(8).  Here, a Customs and Border
7  Protection agent will be able to testify that the TECS system
8  records license plates for vehicles crossing through the border
9  between the United States and Mexico.  Customs and Border
10 Protection is responsible for controlling and regulating passage
11 of vehicles and persons into and out of the United States from
12 Mexico.  Thus, the TECS evidence squarely reflects the regularly
13 conducted activities of the agency.
14      As stated above, on August 12, 2008, the Government provided
15 notice of possible testimony regarding TECS data.  The following
16 day, August 13, 2008, the Government provided Defendant with TECS
17 records regarding the crossing history of the vehicle and
18 Defendant.  The vehicle had four prior crossings on the following
19 dates: May 19, 2008, May 16, 2008, May 15, 2008, and May 9, 2008.
20   These crossings took place with the days leading up to
21 Defendant's arrest.  Accordingly, it is admissible as evidence
22 "inextricably intertwined" with the instant offense.
23 Alternatively, should the Court evaluate this crossing under the
24 more rigorous 404(b) standard, it is admissible under the four-
25 part test articulated in Montgomery, 150 F.3d at 1000-01.
26 //
27

**2.  Other 404(b) Evidence**

At present, the Government does not intent any 404(b) evidence in its case-in-chief. As noted above, the Government does not concede TECS crossing history is 404(b) evidence.

**3.  Exclude Expert Testimony**

As stated above, and as was stated in the Government's August 12, 2008 disclosure, while the Government may elicit testimony from Officer Rangel regarding TECS crossings of the vehicle and Defendant, it does not concede that such testimony constitutes expert testimony under Rule 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 705. Regardless, the Government should be allowed to elicit testimony regarding TECS information from CBP Officer Barron.

**4.  Preclude Introduction of Mug Shot**

The Government does not intend to introduce post-arrest photographs of Defendant. Therefore, Defendant's motion is moot.

**5.  Preclude Evidence of Alien Smuggling Compartment and Alien's Condition**

The location and condition of the material witness are relevant to Defendant's knowledge of the his participation in the smuggling event and the material witness's alienage. This is especially true because the dashboard compartment was modified significantly in order to accommodate the material witness. Therefore, the introduction of such evidence will be to support the knowledge elements required by the violations charged, not to inflame or prejudice the jury. See, e.g., United States v. Perry, 857 F.2d 1346, 1351 (9th Cir. 1988) (holding that the admission of

**1**  testimony used only to prove an element of the offense was not
**2**  plain error.)  Accordingly, such testimony should be admitted.
**3**  6.  **Exclude Evidence of "Nervousness"**
**4**  Evidence regarding a defendant's demeanor and physical
**5**  appearance is admissible as circumstantial evidence that is
**6**  helpful to the jury's determination as to whether a defendant knew
**7**  an alien was concealed in the vehicle.  Fed.R.Evid. 701; United
**8**  States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that a jury
**9**  may consider a defendant's nervousness during questioning at
**10** Calexico port of entry); United States v. Fuentes-Cariaga, 209
**11** F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the
**12** ordinary province of jurors to draw inferences from an undisputed
**13** fact such as a defendant's nervousness at Calexico port of entry);
**14** United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990)
**15** (holding that a jury could infer guilty knowledge from a
**16** defendant's apparent nervousness and anxiety during airport
**17** inspection); Unites States v. Lui, 941 F.2d 844, 848 (9th Cir.
**18** 1991) (holding that a jury could consider guilty knowledge from a
**19** defendant's acting disinterested during airport inspection).
**20** Here, witnesses for the United States may properly testify to
**21** Defendant's demeanor and physical appearance, as they have
**22** personal knowledge based upon their observations of Defendant.
**23** 7.  **Court Should Preclude Any Reference To Alienage Unless Material Witness Testifies**
**24**
**25** Defendant moves to preclude *any* reference to the material
**26** witness's alienage absent his testimony.  The Court should deny
**27** this motion.  First, the Government expects the material witness

1  to testify which obviously would obviate Defendant's concerns.
2  Second, statements made by the material witness would not be the
3  only evidence of his alienage. For instance, the fact that he was
4  secreted in the dashboard of Defendant's vehicle is a strong
5  indicator of alienage. Finally, such statements made by the
6  material witness following his extraction from the compartment
7  would nonetheless be admissible as an exception to the prohibition
8  of hearsay under Federal Rule of Evidence 804(b)(4). The material
9  witness has been subpoenaed to testify. His absence then at trial
10 would satisfy the requirement under Federal Rule of Evidence 804
11 that the declarant be "unavailable." See Fed. R. Evid. 804(a)(5).
12 Accordingly, his statements regarding his personal or family
13 history would be admissible under Federal Rule of Evidence
14 804(b)(4).

15 **8.     Exclude Statements Made By Others To Material Witness**

16         Co-conspirator statements concerning smuggling and
17 transportation arrangements are admissible under Federal Rule of
18 Evidence 801(d)(2)(e). The material witness should be permitted
19 to testify regarding his arrangements to be smuggled into the
20 United States and then transported to his ultimate destination.
21 To the extent theses arrangements and details include statements
22 from Defendant's accomplices or the Defendant himself during the
23 course of the smuggling venture, the Court should admit those
24 statements as non-hearsay statements under the co-conspirator
25 provision.

An out of court statement offered for the truth of the matter asserted is normally considered hearsay under Rule 801(c). However, under Rule 801(d)(2)(E), statements made by a co-conspirator of a party during the course and in furtherance of a conspiracy are not hearsay.

Despite Defendant's assertions to the contrary, the Supreme Court in <u>Crawford v. Washington</u>, 541 U.S. 36, 55 (2004), held that such co-conspirator statements are non-testimonial as well. The <u>Crawford</u> decision specifically identifies co-conspirator statements as non-testimonial, citing its prior decision in <u>United States v. Bourjaily</u>, 483 U.S. 171 (1987), in which the Supreme Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. <u>Crawford</u>, 541 U.S. at 56. The Supreme Court approved its prior holding regarding co-conspirator statements, citing <u>Bourjaily</u> as an example of an earlier case that was consistent with the principal that the Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior opportunity for cross examination. <u>Crawford</u>, 541 U.S. at 57. Several Circuits have allowed such co-conspirator statements post-<u>Crawford</u>. See <u>United States v. Cianci</u>, 378 F.3d 71, 101-2 (1st Cir. 2004); <u>United States v. Saqat</u>, 377 F.3d 223, 229 (2nd Cir. 2004); <u>United States v. Mickelson</u>, 378 F.3d 810, 819-20 (8th Cir. 2004).

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the Government demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171 (1987); United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir. 1991), cert. denied, 503 U.S. 940 (1992). The existence of a conspiracy and defendant's involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence. Fed. R. Evid. 104; Bourjaily, supra, at 175. "Furtherance of a conspiracy" is to be interpreted broadly. United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

The Government is not required to charge the defendant with conspiracy, United States v. Layton, 855 F.2d 1388 (1988), or charge the declarant as a co-defendant in any conspiracy in order to admit co-conspirator statements. United States v. Jones, 542 F.2d 186 (4th Cir. 1976). Furthermore, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant. United States v LeRoux, 738 F.2d 943, 949-950 (8th Cir. 1984). In United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of

the conspiracy." In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it. United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible. Bourjaily, 483 U.S. at 180. Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability. Id. at 182-184.

**A.   Conspiracies Existed**

In this case, the conspiracies consist of the efforts made by known and unknown persons, including Defendant, the material witness, and any paying family member(s), to smuggle the material witness into the United States and transport him to his destination within the United States. The evidence of this conspiracy stems not only from the testimony of the material witness but from the fact of Defendant's arrest and the lack of documentation of the material witness.

**B.   Defendant and the Declarants Were Members of the Conspiracy**

The Government anticipates that the testimony of the material witness at trial will demonstrate that he made the smuggling arrangements directly with alien smugglers in Mexico, including agreeing on a monetary amount. The alien smugglers also contaced the material witness's brother whom the material witness was

supposed to meet once in Los Angeles, Calfornia. As such, several individuals, in addition to Defendant, took part in the effort to smuggle the material witness into the United States. These individuals were part of the conspiracy to smuggle the material witness into the United States.

### C. Co-conspirator Statements Were Made During the Course of, and in Furtherance of, the Conspiracy

The co-conspirator statements that the Government contends are non-hearsay involve the smuggling arrangements made on behalf of the material witness, including the financial arrangements and any statements concerning his transportation from Mexico into the United States. The Government asserts that no smuggling venture would have occurred at all if not for the anticipated payments. Thus, the financial arrangements were an integral component of the smuggling conspiracy and such statements were made in furtherance of the smuggling venture.

As such, all statements regarding the financial arrangements and planning of the smuggling venture made on behalf of the material witness should be admissible against Defendant.

### D. The Court May Conditionally Admit Co-Conspirator Statements

Defendant may contend at the time of trial that the Court may not admit any statements until the Government lays the proper foundation for the above-referenced elements. This position lacks merit. The district court may, if needed, conditionally admit co-conspirator statements subject to a motion to strike if the Government fails to establish the requisite foundation. United

States v. Reed, 726 F.2d 570, 580 (9th Cir. 1984); United States v. Loya, 807 F.2d 1483, 1490(9th Cir. 1987).

### 9. Exclude the Indictment From the Jury Room

As the parties are aware, and as the Court instructs the jury, the indictment is not evidence. The United States submits that the indictment is a helpful way to organize the counts and the charges for the jury. The government defers to the Court's practice as to whether to send the indictment into the jury room.

### 10. Preclude Evidence Pursuant to Rule 16

The Government has abided by its discovery obligations under the rules of criminal procedure and other relevant case law pertaining to discovery, and will continue to do so. Nonetheless, Defendant contends that several requested items of discovery have not been made available to him: (1) the names of Border Patrol agents involved in the case; (2) dispatch tapes related to the arrest of Defendant and Ivan Cervantes-Cervantes; (3) reports of prior apprehensions; and (4) opportunities to inspect Defendant's personal property and cell phone evidence.

First, there were no Border Patrol agents involved in this case. Second, to the best of the undersigned's knowledge, there are no dispatch tapes related to the arrest of Defendant or "Ivan Cervantes-Cervantes." Third, the Government does not intent to introduce evidence of prior apprehensions of Defendant, as none exist. Fourth, Defendant has had every opportunity to inspect the vehicle and any other personal property seized in this case.

//

**11. Produce Grand Jury Transcripts**

Defendant seeks production of the grand jury transcripts yet fails to support his motion with a showing of the requisite need to invade the sanctity of the grand jury's deliberations. As such, his motion should be denied.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). The Government does not anticipate calling as a witness in this case any witness that previously testified about it before the Grand Jury. Accordingly, there is no extraordinary basis to support Defendant's request for grand jury transcripts.

### III

### CONCLUSION

For the foregoing reasons, the Government requests that Defendant's motions be denied where indicated.

DATED: August 24, 2008.

                                      Respectfully submitted,

                                      KAREN P. HEWITT
                                      United States Attorney

                                      s/ Peter J. Mazza
                                      PETER J. MAZZA
                                      Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08CR1181-WQH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| ANGEL RIOS, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

   I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

   I am not a party to the above-entitled action. I have caused service of the Government's Response in Opposition to Defendant's Motions *In Limine* on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

   1. Timothy Garrison, Esq.

   I declare under penalty of perjury that the foregoing is true and correct.

   Executed on August 24, 2008.

                                   s/ Peter J. Mazza
                                   PETER J. MAZZA